IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-SA 2010-0021 |
| Petitioner, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| HON. RICHARD D. NICHOLS, Judge | ) | |
| of the Superior Court of the State of | ) | |
| Arizona, in and for the County of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT ARTHUR ERGONIS, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR20074823

JURISDICTION ACCEPTED; RELIEF GRANTED

Terry Goddard, Arizona Attorney General
  By Kimberly H. Ortiz                                                        Tucson
                                                        Attorneys for Petitioner


Payson & Gattone
  By Paul Gattone                                                             Tucson
                                            Attorneys for Real Party in Interest

B R A M M E R, Judge.

¶1 In this special action, the State of Arizona seeks relief from the respondent judge's order compelling a crime victim, J.C., to submit to a pretrial interview by defense counsel. At issue is an ambiguity in the definition of a "victim" in Arizona's Victims' Bill of Rights ("VBR"), article II, § 2.1 of the Arizona Constitution.[1] The question we must answer is whether, by excluding from the VBR's definition of a "victim" any person "in custody for an offense," Arizona voters intended to deny victims' rights not only to inmates against whom a criminal offense has been committed while they are incarcerated but also, more broadly, to exclude those who, after having been victimized, subsequently are taken into custody and remain incarcerated for any reason when they otherwise could exercise a right or rights conferred on victims by the VBR.

¶2 We accept jurisdiction of this special action for several reasons. First, A.R.S. § 13-4437(A) and Rule 2(a)(2), Ariz. R. P. Spec. Actions, expressly authorize victims to enforce their rights under the VBR in special action proceedings. Additionally, the challenged order is interlocutory in nature, and the state has no equally plain, speedy, or adequate remedy by appeal. *See* Ariz. R. P. Spec. Actions 1(a). And, the issue presented "is one of first impression, involves only questions of law[,] and is of

---

[1]The VBR was added to the Arizona Constitution after voters in the November 1990 general election approved Proposition 104, which was based on a voter-initiative measure. *See* Ariz. Const. art. II, § 2.1, hist. note. "[T]he constitutional amendment contained in Proposition 104 became effective upon the November 27[, 1990,] proclamation by the governor." *State v. Warner*, 168 Ariz. 261, 263, 812 P.2d 1079, 1081 (App. 1990).

statewide importance to the criminal justice system . . . ." *State v. Warner*, 168 Ariz. 261, 262, 812 P.2d 1079, 1080 (1983). We conclude that J.C. retained his constitutional right to refuse to be interviewed by the defense, *see* art. II. § 2.1(A)(5), and that the respondent judge erred in compelling him to submit to an interview, *see* Ariz. R. P. Spec. Actions 3(c).

FACTS AND PROCEDURE

¶3 Real party in interest Robert Ergonis is one of four codefendants indicted together in March 2008 in Pima County cause number CR20074823. The indictment charges Ergonis with five dangerous-nature felonies committed against J.C., who was kidnapped, robbed, and assaulted in Tucson on December 8, 2007. Shortly thereafter J.C. moved from Arizona to Massachusetts. There, he was arrested and later convicted of an unrelated weapons offense, for which he was incarcerated from October 30, 2008, until March 10, 2009.

¶4 In December 2008, while J.C. was in custody in Massachusetts, counsel for Kumari Fulbright, one of Ergonis's codefendants, requested a pretrial interview of J.C. In a motion to compel the interview filed on March 2, 2009, Fulbright's counsel argued that, because J.C. was in custody on criminal charges, he "no longer ha[d] the status of a victim" under the VBR and therefore could not refuse to be interviewed. Although tacitly agreeing with that position, the state argued the issue was moot because J.C. had been released on March 10, 2009. By implication, the state suggested J.C. had regained his status and rights as a victim under the VBR when released.

3

¶5        At a hearing on November 9, 2009, Fulbright's counsel reargued his previously filed motion to compel an interview with J.C. Counsel reiterated Fulbright's position that, "if a named victim is incarcerated, he gives up his victim's right to the extent he cannot decline to be interviewed." Again the state did not dispute Fulbright's interpretation of article II, § 2.1. Asked by the respondent judge if she "agree[d] that once a victim is in custody even on other charges, that they lose their constitutional right to refuse to be interviewed," the prosecutor responded, "That's what [*Stapleford v. Houghton*, 185 Ariz. 560, 562, 917 P.2d 703, 705 (1996)] says, yes. That's what the statute says."

¶6        The state opposed Fulbright's interview requests below based not on the meaning of the phrase "in custody," but rather on the timing of Fulbright's requests in relation to the dates of Joshua's incarceration and release from custody in Massachusetts. With respect to Ergonis, the state additionally argued he never had made a sufficient request to interview J.C. because his counsel had not filed a separate, written motion but, instead, merely had replied in the affirmative when asked orally if he wished to join in Fulbright's motion.[2] After the prosecutor agreed when the respondent judge asked if it was "purely as a practical matter that [counsel for Fulbright] wasn't able to interview

_____

[2]According to the state, Ergonis did not join in Fulbright's motion to interview J.C. until November 9, 2009, months after his release from custody. This assertion appears at least debatable, as Fulbright's counsel stated in the written "motion for sanctions to compel the interview of [J.C.]" he filed on March 2, 2009, that he had spoken to Ergonis's counsel "who indicates that not only does she join in the motion [but] requested that [Fulbright's counsel] advise the Court that she will be prepared for the interview, so that the timing of the interview is not an issue."

4

[J.C.] because he was detained and then released too quickly," the respondent granted the motion to compel the interview. The respondent found "the defense [had] file[d] a request to interview the victim at a time when the victim did not have the right to refuse to be interviewed because of his incarceration." At the state's request, we have stayed the respondent's order compelling J.C. to submit to the interview and Ergonis's criminal trial pending our ruling in this matter.

## DISCUSSION

¶7 Crime victims' rights in Arizona are protected by our constitution, by statute, and by court rule. Even before the constitutional amendment that added the VBR, our supreme court had adopted Rule 39, Ariz. R. Crim. P., "to preserve and protect a victim's rights to justice and due process." Ariz. R. Crim. P. 39(b), effective Aug. 1, 1989. Then, in the November 1990 general election, voters approved Proposition 104, the VBR, which was based on a voter-initiative measure.[3] *See* Ariz. Const. art. II, § 2.1, hist. note. The year following the adoption of the VBR, under the authority granted by § 2.1(D) of article II,[4] our legislature enacted the Victims' Rights Implementation Act, *see* 1991 Ariz. Sess. Laws, ch. 229, §§ 1-17, now codified as A.R.S. §§ 13-4401 through

---

[3]"[T]he constitutional amendment contained in Proposition 104 became effective upon the November 27[, 1990,] proclamation by the governor." *Warner*, 168 Ariz. at 263, 812 P.2d at 1081.

[4]Subsection 2.1(D) of article II provides in pertinent part: "The legislature, or the people by initiative or referendum, have the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section . . . ."

5

13-4440.[5] *See generally State v. Roscoe*, 185 Ariz. 68, 70, 912 P.2d 1297, 1299 (1996) (providing historical overview).

¶8 Article II, § 2.1(C) of the Arizona Constitution defines "[v]ictim" for purposes of the VBR as

> a person against whom the criminal offense has been committed or, if the person is killed or incapacitated, the person's spouse, parent, child or other lawful representative, except if the person is in custody for an offense or is the accused.

Section 13-4401(19) of the Victims' Rights Implementation Act provides a definition of "[v]ictim" containing additional language not included in the VBR.[6] However, it is the constitutional definition that ultimately controls. *See Roscoe*, 185 Ariz. at 72, 912 P.2d at 1301 (neither implementing statutes nor court rules "'eliminate or narrow rights

---

[5]As originally enacted, chapter 40 of title 13, A.R.S., consisted of A.R.S. §§ 13-4401 through 13-4437. *See* 1991 Ariz. Sess. Laws, ch. 229, § 7. Sections 13-4438, 13-4439, and 13-4440, A.R.S., were added sequentially later. *See* 1993 Ariz. Sess. Laws, ch. 235, § 1 (adding former § 13-3328, which later was amended and renumbered as A.R.S. § 13-610, *see* 2002 Ariz. Sess. Laws, ch. 226, § 2); 2004 Ariz. Sess. Laws, ch. 131, § 1 (adding current § 13-4438); 2001 Ariz. Sess. Laws, ch. 334, § 24 (adding § 13-4439); 2008 Ariz. Sess. Laws, ch. 237, § 2 (adding § 13-4440).

[6]Section 13-4401(19) provides:

> "Victim" means a person against whom the criminal offense has been committed, including a minor, or if the person is killed or incapacitated, the person's spouse, parent, child, grandparent or sibling, any other person related to the person by consanguinity or affinity to the second degree or any other lawful representative of the person, except if the person or the person's spouse, parent, child, grandparent, sibling, other person related to the person by consanguinity or affinity to the second degree or other lawful representative is in custody for an offense or is the accused.

guaranteed by the state constitution'"), *quoting State v. Lamberton*, 183 Ariz. 47, 50, 899 P.2d 939, 942 (1995); *Knapp v. Martone*, 170 Ariz. 237, 240 n.5, 823 P.2d 685, 688 n.5 (1992) (legislature has power to "'define, implement, preserve and protect'" victims' rights but not "to redefine the *scope* of those rights"), *quoting* Ariz. Const., art. II, § 2.1(D); *Turley v. Bolin*, 27 Ariz. App. 345, 348, 554 P.2d 1288, 1291 (1976) (rights created by initiative or referendum not subject to derogation by legislature; "'legislative authority, acting in a representative capacity only, [i]s in all respects intended to be subordinate to direct action by the people'"), *quoting Whitman v. Moore*, 59 Ariz. 211, 220, 125 P.2d 445, 451 (1942).

¶9        In a reversal of the position it presented the respondent judge, the state now contends the phrase "in custody for an offense" refers only to the time when "the criminal offense [w]as . . . committed" against the "person," who, if neither then "in custody" nor "the accused," thereby became a victim for purposes of the VBR. Ergonis, on the other hand, maintains the phrase "in custody" connotes no such temporal restriction. Under his interpretation, a person against whom a crime was committed subsequently loses the rights conferred by the VBR if later taken into custody for any reason.

¶10        In all proceedings before the respondent judge, the state agreed—either implicitly or expressly—with the defense argument that J.C. had lost his rights under the VBR during the time he was in custody in Massachusetts.[7] That the state now has abandoned that interpretation in favor of its present position—presumably having

---

[7]Both parties appeared to assume implicitly that J.C. regained his status and rights as a victim under the VBR automatically upon his release.

7

advanced both views in good faith and thus having by turns deemed either construction plausible—well illustrates and aptly underscores the temporal ambiguity permitted by the phrase "in custody for an offense" as used in the definition of a "victim" in § 2.1(C) of the VBR.

¶11        We appreciate that the legal basis for our decision was not argued to the respondent judge below. We do not apply the customary rules of waiver in this instance, however, because it is not the state's rights but J.C.'s that the VBR protects. *See generally* A.R.S. § 13-4437(C) ("At the request of the victim, the prosecutor may assert any right to which the victim is entitled."). And we decline to penalize him for the state's having urged a legal position below that it since has reconsidered and abandoned in its special action petition.

¶12        The proper interpretation of constitutional language presents a question of law this court reviews de novo. *See Massey v. Bayless*, 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996). When the wording of a constitutional provision is clear and unambiguous, we apply it according to its plain meaning, without resort to other means of construction. *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). Ambiguity exists when, as here, the meaning or interpretation of a provision is uncertain. *Heath v. Kiger*, 217 Ariz. 492, ¶ 6, 176 P.3d 690, 692 (2008). When a constitutional provision is ambiguous, "'we may consider the history behind the provision, the purpose sought to be accomplished, and the evil sought to be remedied.'" *Id.* ¶ 9, *quoting Jett*, 180 Ariz. at 119, 882 P.2d at 430.

¶13 Here, that purpose is stated clearly and succinctly in the opening language of the VBR: "To preserve and protect victims' rights to justice and due process." As our supreme court elaborated in *Champlin v. Sargeant*, 192 Ariz. 371, ¶ 20, 965 P.2d 763, 767 (1998), the VBR and its implementing legislation were enacted "to provide crime victims with 'basic rights of respect, protection, participation and healing of their ordeals.'" *Id.*, *quoting* 1991 Ariz. Sess. Laws, ch. 229, § 2.[8] Since the adoption of the VBR, "the victim's right to decline an interview has been considered absolute." *Roscoe*, 185 Ariz. at 74, 912 P.2d at 1303; *accord State v. O'Neil*, 172 Ariz. 180, 182, 836 P.2d 393, 395 (App. 1991) ("[T]he [VBR] abrogated a defendant's right under Rule 15[, Ariz. R. Crim. P.,] to interview or otherwise seek discovery from an unwilling victim."); *Day v. Superior Court*, 170 Ariz. 215, 217, 823 P.2d 82, 84 (App. 1991) ("The [VBR] precludes the trial court from ordering the deposition of a victim who has indicated an unwillingness to be interviewed.").

¶14 Despite both Ergonis's argument in his response to the petition for special action and the state's previous concurrence in that interpretation below, no Arizona case has held, even implicitly, that a victim loses his or her status and rights under the VBR if later taken into custody for an unrelated reason. Indeed, the principal case on which the parties have relied, *Stapleford*, stands only for the narrower interpretation of the phrase

---

[8]In an earlier comment to Rule 39 following the enactment of the Victims' Rights Implementation Act in 1991, our supreme court observed, "'*In general*, it appeared that the definition of a victim should be a generous one.'" *Roscoe*, 185 Ariz. at 70, 912 P.2d at 1299, *quoting* Ariz. R. Crim. P. 39 1991 cmt. (emphasis in *Roscoe*).

"in custody" as meaning the victim was in custody when the criminal offense was committed.

¶15        The victim in *Stapleford* was a prisoner named Corso who had been assaulted by his cellmate. 185 Ariz. at 561, 917 P.2d at 704. Reversing the trial court's ruling, and requiring Corso to submit to a pretrial interview, our supreme court concluded Corso was not a "victim" as defined in the VBR because he was in custody. 185 Ariz. at 563, 917 P.2d at 706. Although nowhere in its discussion did the court expressly state that the words "in custody" meant "in custody when the offense was committed against him," that is the only specific holding the facts of the case permit. It is also the only holding the case requires. Interpreting the words "in custody" to mean "subsequently in custody" or "in custody at any time" would broaden the holding of *Stapleford* beyond its facts, and nothing in the court's language expressly supports, much less compels, such an expansive interpretation of the phrase.

¶16        We evinced the same view, albeit in dicta, in *State v. Carlos*, 199 Ariz. 273, ¶ 20, 17 P.3d 118, 124 (App. 2001). There, too, the underlying criminal charges had arisen from the alleged assault of one prison inmate by another. The defendant successfully argued on appeal that the trial court had abused its discretion in preventing him from calling the victim, F., to testify. In concluding the court had "denied Carlos his Sixth Amendment right to compulsory process by precluding him from calling F. as a witness," *id.* ¶ 22, we observed: "Because F. was incarcerated at the time of the assault, he was not entitled to the protections of the Victims' Bill of Rights, and thus had no

constitutional right to refuse an interview with Carlos under article II, § 2.1 of the Arizona Constitution." *Id.* ¶ 20.

**¶17**     Ergonis has cited no legal authority directly supporting his broad interpretation of the phrase "in custody." Nor has he persuaded us that a victim's later incarceration on unrelated charges should divest that victim of constitutional rights previously acquired.[9] As we observed in *State v. Stauffer*, 203 Ariz. 551, ¶ 9, 58 P.3d 33, 36 (App. 2002), "a crime victim's rights are specific to a crime committed upon that victim and arise . . . upon an arrest for or formal charging of that crime." Ergonis has not urged, and we cannot conceive, a compelling reason why, in the absence of clear language in the VBR expressly so providing, accrued constitutional rights that are "specific to a crime committed upon" a victim should later be suspended or forfeited if the victim is taken into custody for an entirely unrelated reason.[10]

---

[9]A subsequent arrest on "related" charges, on the other hand, could in some cases make the victim "the accused"—or, at least, "[an] accused"—who then presumably would no longer meet the definition of a "victim" for purposes of the VBR—a question neither presented nor addressed here.

[10]Section 13-4402(A) of the Victims' Rights Implementation Act provides that the constitutional rights conferred by the VBR "arise on the arrest or formal charging of the person or persons who are alleged to be responsible for a criminal offense against a victim." They remain enforceable until the "final disposition of the charges, including acquittal or dismissal of the charges, all post-conviction release and relief proceedings and the discharge of all criminal proceedings relating to restitution." § 13-4402(A). Such rights cease to exist only "[a]fter the final termination of a criminal prosecution by dismissal with prejudice or acquittal." § 13-4402(C); *see also State ex rel. Romley v. Dairman*, 208 Ariz. 484, ¶ 20, 95 P.3d 548, 554 (App. 2004). Neither § 13-4402, nor the VBR itself, provides for the interruption, suspension, or divestiture of a victim's rights should the victim subsequently be taken into custody.

¶18 Clearly, the mere possibility that a victim later might be in custody for some suspected or actual wrongdoing is not alone disqualifying. In *State v. Clinton*, 181 Ariz. 299, 300, 890 P.2d 74, 75 (App. 1995), for example, Division One of this court held that an assault victim, partially at fault for her injuries, nonetheless was entitled to an award of restitution under the VBR. The court stated: "A crime victim retains victims' rights even if the facts suggest that the victim might be culpable herself." *Id.* In reaching its conclusion, the court relied on *Knapp*, 170 Ariz. at 239, 823 P.2d at 687, in which our supreme court found the protections of the VBR extended to the mother of two murdered children, even though she was suspected in their deaths, because she had not been charged or named in a charging document as a coconspirator and was "therefore not an accused" under the VBR.

¶19 Equally clearly, there are administrative considerations and logistical challenges that attend the exercise of a victim's rights if the victim is in custody. Rule 39, Ariz. R. Crim. P., illustrates our supreme court's accommodation of those constraints. Thus, Rule 39(a)(1) provides:

> If a victim is in custody for an offense, the victim's right to be heard pursuant to this rule is satisfied through affording the victim the opportunity to submit a written statement, where legally permissible and in the discretion of the court. A victim not in custody may exercise his or her right to be heard pursuant to this rule by appearing personally, or where legally permissible and in the discretion of the court, by submitting a written statement, an audiotape or videotape.

Ultimately, of course, the procedure specified in Rule 39 is not dispositive of the issue before us. But, by recognizing that a victim who "is in custody for an offense" retains a

"right to be heard" in keeping with the rights conferred by the VBR, the rule's language nonetheless supports the conclusion we reach here.

¶20     We recognize that accepting Ergonis's interpretation of the phrase "in custody" as meaning "in custody at any time for any reason" eliminates the administrative challenges inherent in allowing incarcerated victims to exercise their rights under the VBR. But we can discern no other rationale—and certainly none consistent with the VBR's goals of respecting and protecting victims and facilitating their participation in the criminal prosecutions of their assailants—for interpreting the phrase "in custody" so broadly. The implications of such an interpretation would invite arbitrary, potentially unjust, and even absurd results.

¶21     As the record reflects, J.C. was released on bond shortly after his arrest in Massachusetts in December 2007. Under Ergonis's interpretation of the VBR, J.C. would have been divested of his victim's rights for the duration of his initial, brief incarceration but would have reacquired them promptly upon his release; the same theoretical divestiture and reattachment would have occurred again when he later served and then completed his sentence. If, hypothetically, a victim were in and out of custody repeatedly while awaiting trial, what logical or principled argument suggests his or her rights under the VBR should be suspended and restored in successive, random cycles? What of victims who later are placed in custody and cannot afford to post bond? Or one who is arrested briefly but not formally charged, or unlawfully or wrongly detained? Or those who might violate conditions of probation or parole? Nothing in the purpose or the language of the VBR leads us to believe that Arizona voters in November 1990 imagined,

13

much less intended, that the constitutional rights they intended to create by passing the VBR could be so mechanistically lost and reacquired, perhaps multiple times in succession, depending on the endless variety of circumstances that may attend a person's being "in custody" at some point after having been the victim of a crime.

¶22        The clearest, simplest, and most logical interpretation of the phrase "in custody for an offense," therefore, is the one reflected in *Stapleford*[11] and *Carlos*[12] and the one we endorse here:  the VBR denies victim status and rights only to persons who are themselves "the accused" or who are already in custody when the criminal offense is committed against them.  Having considered the consequences of the interpretation urged by Ergonis, we conclude that a crime victim's rights, which "are specific to a crime committed upon that victim," *Stauffer*, 203 Ariz. 551, ¶ 9, 58 P.3d at 36, are not thereafter lost if the victim subsequently should be "in custody for an [unrelated] offense." *See also Knapp*, 170 Ariz. at 239, 823 P.2d at 687 ("The only victims excluded from the protection of the [VBR] are those 'in custody for an offense' or those who are 'the accused.'"), *quoting* Ariz. Const. art. II, § 2.1(C).

¶23        Despite the state's failure to assist the respondent judge below with an appropriate legal argument, we nonetheless conclude the respondent's ruling rests on an erroneous interpretation of article II, § 2.1(C) of the Arizona Constitution.  And, because an error of law amounts to an abuse of discretion, *see* Ariz. R. P. Spec. Actions 3(c);

---

[11]185 Ariz. at 563, 917 P.2d at 706.

[12]199 Ariz. 273, ¶ 20, 17 P.3d at 124.

14

*Althaus v. Cornelio*, 203 Ariz. 597, ¶ 4, 58 P.3d 973, 975 (App. 2002) (court abuses discretion by committing error of law), we accept jurisdiction of the special action, grant the relief requested, and vacate the respondent judge's order compelling J.C. to submit to a pretrial interview by the defense.

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:


/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Presiding Judge


/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge

15