IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

JAN 13 2011

COURT OF APPEALS
DIVISION TWO

|  |  |  |
|---|---|---|
| THE STATE OF ARIZONA | ) | |
| | ) | 2 CA-SA 2010-0068 |
| Petitioner, | ) | DEPARTMENT A |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| HON. KENNETH LEE, Judge of the | ) | |
| Superior Court of the State of Arizona, | ) | |
| in and for the County of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DAVID FRANKLIN, SR. and | ) | |
| JOHN DAVID FRANKLIN, JR., | ) | |
| | ) | |
| Real Parties in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. C20090290

JURISDICTION ACCEPTED; RELIEF GRANTED

Terry Goddard, Arizona Attorney General
  By Mike Jette                                                          Tucson
                                                    Attorneys for Petitioner


Piccarretta & Davis, P.C.
  By Michael L. Piccarretta and Jefferson Keenan                        Tucson
                                          Attorneys for Real Party in Interest
                                                    John David Franklin, Sr.

Law Office of Michael L. Brown
  By Michael L. Brown                                                    Tucson
                                              Attorney for Real Party in Interest
                                                        John David Franklin, Jr.

---

B R A M M E R, Presiding Judge.

**¶1**          In this special action, the State of Arizona seeks relief from the respondent judge's orders compelling depositions in the underlying civil forfeiture proceeding by the real parties in interest, defendants in both the forfeiture action and a parallel criminal proceeding, of named victims in the criminal proceeding.  At issue is the scope of a victim's right to refuse a pre-trial deposition under Arizona's Victims' Bill of Rights (VBR), article II, § 2.1 of the Arizona Constitution.  The question we must answer is whether the VBR guarantees victims the right to refuse such a deposition in a civil proceeding.

**¶2**          We accept jurisdiction of this special action because A.R.S. § 13-4437(A) and Rule 2(a)(2), Ariz. R. P. Spec. Actions expressly authorize victims to preserve their rights under the VBR by a special action proceeding.  In addition, the challenged order is interlocutory in nature, and the state has no equally plain, speedy, or adequate remedy by appeal.  *See* Ariz. R. P. Spec. Actions 1(a).  Also relevant to our decision to accept special action jurisdiction is that the issue presented "is one of first impression, involves only questions of law[,] and is of statewide importance to the criminal justice system." *See State v. Warner*, 168 Ariz. 261, 262, 812 P.2d 1079, 1080 (App. 1990).  We grant relief because the respondent judge "erred as a matter of law, thereby abusing [his] discretion," by denying the state's request for a protective order to preclude the

2

depositions. *See Potter v. Vanderpool*, ___ Ariz. ___, ¶ 14, 240 P.3d 1257, 1262 (App. 2010); *see also* Ariz. R. P. Spec. Actions 3(c) (identifying abuse of discretion among grounds for granting special action relief). We hold that victims retain their constitutional right to refuse to be deposed by the defense in a civil proceeding where the subject matter of the proposed deposition is the criminal offense committed against those victims.

**Factual and Procedural Background**

¶3        In April 2009, the state filed a civil forfeiture action against real parties in interest, John David Franklin, Sr. and John David Franklin, Jr.[1] The Franklins were indicted in May 2009 in Pima County cause number CR20091750 for fraudulent schemes and artifices, theft, illegally conducting an enterprise, and money laundering. After the state voluntarily remanded that case to the Pima County grand jury for a new finding of probable cause, a second indictment was returned in December 2009, Pima County cause number CR20094710, which added forgery to the previous charges and identified seven customers as alleged victims. The civil and criminal cases both stemmed from alleged fraudulent sales and extension of credit during the operation of a used motor vehicle dealership owned by John Franklin, Sr. and operated by John Franklin, Jr.

¶4        In the civil forfeiture case, the Franklins sought to depose individuals who had been identified as victims in the criminal case. The attorney general's office, which is prosecuting the civil forfeiture action, sent letters to the victims, informing them that

---

[1]During the relevant proceedings, John David Franklin, Jr. also has been referred to as "John Jay Franklin" and "John David 'Jay' Franklin."

3

their depositions had been scheduled and advising them the state believed they could refuse to submit to the depositions. The letters asked the victims whether they wanted to assert or waive their right to refuse to be interviewed or deposed before the criminal trial. Two of the victims returned the letters stating they intended to assert their right to refuse an interview, and four verbally informed the attorney general's office they did not wish to be interviewed.[2] The state sought protective orders in both the criminal and civil cases to prevent depositions of the victims in the forfeiture proceeding. The judges in both cases denied the motions. The state subsequently filed this special action on behalf of the victims to determine whether the VBR gives the victims the right to refuse to be deposed in the civil forfeiture proceeding.

## Discussion

### Standing

¶5      The Franklins first contend in response to the petition for special action relief that the state lacks standing to bring this special action because no victim specifically requested the state's representation or filing of this special action, and no victim has refused to be deposed. Rule 2(a)(2), Ariz. R. P. Spec. Actions, allows a prosecutor to institute special action proceedings at the request of a victim to seek relief from an order that violates a victim's rights. Similarly, Rule 39(c)(2), Ariz. R. Crim. P. states the prosecutor has standing to assert any of the victim's rights "upon the victim's

---

[2]The seventh victim did not respond to the letter, but had already been deposed.

request." The Franklins assert the victims' responses to the attorney general's letters are insufficient to constitute a request as the rules require. We disagree.

**¶6** The victims took the affirmative step of notifying the state they wished to assert their rights to refuse pre-trial depositions and the state has standing to assert those rights on behalf of the victims. *See Warner*, 168 Ariz. at 263, 812 P.2d at 1081; *see also* Ariz. R. Crim. P. 39(c)(2) (prosecutor has standing to "assert any of the rights to which the victim is entitled"). Nothing in the rules suggests a victim must initiate the discussion about whether rights granted by the VBR are implicated or need to be protected. Nor does there appear any requirement that a victim specify the method by which the prosecutor is to assert those rights. We decline to find an implied requirement in the rule that victims initiate contact or specifically request the appropriate form of proceeding. *See* Ariz. R. Crim. P. 39(b) ("These rules shall be construed to preserve and protect a victim's rights to justice and due process."). Indeed, the rules do not require the prosecutor to obtain a victim's consent before filing each motion or petition to enforce the asserted rights. Such a requirement would be onerous in cases like this, in which the only means by which relief may be obtained is the filing of a special action petition. *See, e.g.*, *Morehart v. Barton*, 225 Ariz. 269, ¶ 5, 236 P.3d 1216, 1218 (App. 2010) (special action jurisdiction accepted because right asserted by victims not capable of protection if reviewed after trial).

**Delay**

¶7        The Franklins next assert the state unduly delayed filing the petition and that this court therefore should decline to accept special action jurisdiction.[3] The Franklins contend the state should have sought relief immediately after the trial court denied the state's motion for protective order on May 24, 2010. "Arizona courts have repeatedly found laches to be the only restriction on the time for filing a petition for special action." *State ex rel. McDougall v. Tvedt*, 163 Ariz. 281, 283, 787 P.2d 1077, 1079 (App. 1989). However, based on the amended notices, the victims' depositions were not scheduled to occur until September 20. The state's third motion for protective order and to stay the depositions was denied by the respondent judge on October 1 and this special action proceeding was filed three days later. In light of the fact that various motions relating to the depositions were pending, and given the timing of the resolution below of those motions and the amended notices of depositions, the state did not unreasonably delay filing the special action petition. The petition, consequently, was filed timely. We note, moreover, that the Franklins have not alleged the purported delay was prejudicial. Therefore, even assuming arguendo the state unreasonably had delayed filing this special action proceeding, the Franklins' laches-based argument would fail in

[3]The state's motion for protective order was denied in the criminal case on March 25, 2010 and in the civil case on May 24, 2010. In the May 24 minute entry, the trial court also stated "no deposition shall occur or be noticed for the future until the Court can address in the context of a Case Management Conference the schedule of disclosure and other discovery devices, including depositions." The court ordered "that claimants shall have the right to take the noticed depositions" on August 23, 2010. On September 20, 2010 the Franklins filed amended notices of taking the victims' depositions.

any event. *See Sotomayor v. Burns*, 199 Ariz. 81, ¶ 6, 13 P.3d 1198, 1200 (2000) (laches bars claim when delay unreasonable and results in prejudice).

**The Victims' Bill of Rights**

¶8          The rights of crime victims are protected by Arizona's Constitution.  The VBR provides, in relevant part, as follows:

> (A)  To preserve and protect victims' rights to justice and due process, a victim of crime has a right:
>
> 1.    To be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process.
>
> . . . .
>
> 5.    To refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant.

Ariz. Const. art. II, § 2.1.  The portion of the VBR granting victims the right to refuse depositions has been implemented by statute and is complemented by Rule 39(b) Ariz. R. Crim. P.[4]  However, we follow and apply the language of the constitutional provision to

---

[4]A.R.S. § 13-4433(A) reads:

> the victim shall not be compelled to submit to an interview on any matter, including any charged criminal offense witnessed by the victim and that occurred on the same occasion as the offense against the victim, or filed in the same indictment or information or consolidated for trial, that is conducted by the defendant, the defendant's attorney or an agent of the defendant.

Rule 39(b)(11), Ariz. R. Crim. P., implemented before the VBR, provides: "These rules shall be construed to preserve and protect a victim's rights to justice and due process . . . . [A] victim shall have . . . the following rights: . . . [t]he right to refuse an interview, deposition, or other discovery request by the defendant [or a representative]."

determine the scope of a victim's rights, because neither the legislature nor court rules can eliminate or reduce rights guaranteed by the VBR. *State v. Lamberton*, 183 Ariz. 47, 50, 899 P.2d 939, 942 (1995); *State v. Nichols*, 224 Ariz. 569, ¶ 8, 233 P.3d 1148, 1150 (App. 2010); *State ex rel. Thomas v. Klein*, 214 Ariz. 205, ¶ 11, 150 P.3d 778, 781 (App. 2007); *see also* A.R.S. § 13-4418 (statutes implementing VBR "shall be liberally construed to preserve and protect the rights to which victims are entitled").

¶9        We review the interpretation of constitutional language de novo. *See Massey v. Bayless*, 187 Ariz. 72, 73, 927 P.2d 338, 339 (1996). To determine the meaning of a constitutional provision, we must determine "'the intent of the electorate that adopted it.'" *Heath v. Kiger*, 217 Ariz. 492, ¶ 9, 176 P.3d 690, 693 (2008), *quoting Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). The best reflection of that intent is the plain language of the provision, "and we do not go outside the plain language . . . unless [it] is unclear." *Phelps Dodge Corp. v. Arizona Elec. Power Coop., Inc.*, 207 Ariz. 95 ¶ 42, 83 P.3d 573, 587 (App. 2004). Thus, to determine the meaning of the VBR and serve its purpose, we look first to its plain language and reject ad hoc exceptions to its protections. *Knapp v. Martone*, 170 Ariz. 237, 239, 823 P.2d 685, 687 (1992).

¶10        The VBR grants a "victim of crime" the right "[t]o refuse a[] . . . deposition . . . request by the defendant" or a representative of the defendant. Ariz. Const. art. II, § 2.1(A)(5). This plain language limits the scope of a victim's right only by the identity of the person requesting the interview—the defendant or the defendant's representative— and the identity of the person to whom the request is directed—a crime victim. It does

8

not limit the proceedings to which the right extends.[5] Courts have interpreted broadly a victim's right to refuse an interview about the offense against the victim. For example, "a victim's right to refuse to be interviewed about the offense committed against that victim is inviolate," even as to other offenses with which the defendant has been charged in a separate prosecution. *State v. Stauffer*, 203 Ariz. 551, ¶ 7, 58 P.3d 33, 35-36 (App. 2002); *see also State ex rel. Romley v. Hutt*, 195 Ariz. 256, ¶ 7, 987 P.2d 218, 221 (App. 1999) ("Arizona's appellate courts have considered the victim's right to decline a defense interview 'absolute.'") *citing State v. Roscoe*, 185 Ariz. 68, 74, 912 P.2d 1297, 1303 (1996).[6]

¶11    The Franklins argue the scope of the VBR does not protect victims from civil depositions because it provides that victims have the right "[t]o be treated with

---

[5]Our dissenting colleague bases a contrary view on his premise that the VBR is "ambiguous" in part because of the use of the terms "interviews" and "depositions" in the Arizona rules of civil and criminal procedure. *See infra* ¶ 17. We question, however, whether ambiguity can be injected so readily into the constitution by reference to extrinsic sources. *See Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, ¶ 9, 18 P.3d 713, 717 (App. 2001) (if plain language of constitutional provision "clear and unambiguous, we generally subscribe to that meaning" and "may not use extrinsic evidence to vary a provision's apparent meaning").

[6]In *Champlin v. Sargeant*, the Arizona Supreme Court observed that nothing in the VBR gives victims "a blanket right to be shielded from all contact with defendants or their attorneys." 192 Ariz. 371, ¶ 20, 965 P.2d 763, 767 (1998). The court relied on the language of A.R.S. § 13-4433(A) to hold that "those who are not victims but merely witnesses of particular criminal behavior, though perhaps victims of other behavior by the same defendant on separate occasions, may be interviewed as to the former but not the latter." *Id.* ¶ 18. Significantly, the year after *Champlin* was decided, the legislature amended § 13-4433(A) to allow victims like the one in *Champlin* to refuse an interview. 1999 Ariz. Sess. Laws, ch. 261, § 45. To the extent *Champlin* is still good law, its limited holding is that a victim does not have the right to refuse a deposition or interview on a subject unrelated to the offense against the victim. Neither party here suggests the victims are to be deposed as to matters unrelated to the offenses committed against them.

fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. II, § 2.1(A)(1). They contend that, although Ariz. Const. art. II, § 2.1(A)(1) and (A)(5) are co-equal parts within the same provision, the former "sets forth the overall mission, purpose, and scope of the [VBR]." We read constitutional provisions as a whole, and give meaningful operation to each part in harmony with the others. *Corp. Comm'n v. Pac. Greyhound Lines*, 54 Ariz. 159, 170, 94 P.2d 443, 447 (1939); *cf. Lebaron Prop., LLC v. Jeffrey S. Kaufman, Ltd.*, 223 Ariz. 227, ¶ 7, 221 P.3d 1041, 1043 (App. 2009) (where intent unclear, we read statutes as whole). Even when the two subsections are read together, and even if we assume arguendo that Ariz. Const. art. II, § 2.1(A)(1) limits the scope of the entire VBR, the state's proposed interpretation of a victim's right to refuse to be deposed in a civil case is in harmony with the VBR's plain language. The state argues victims are allowed to assert their rights "any time during the criminal justice process" and that "[s]o long as the criminal process is underway, the right to refuse a deposition is absolute."[7] In other words, the state posits that, even if the right to refuse to be deposed is limited to the duration of the criminal justice process, a victim may assert that right in any venue during that time. We agree. As we recognized in *Stauffer*, "a victim's right to refuse to be interviewed about the offense committed against that victim is inviolate," even as to other offenses committed on the same occasion by the defendant or during a separate prosecution altogether. 203 Ariz. 551, ¶ 7, 58 P.3d at 35-36. We see no reason not to

---

[7]The state does not propose, and we decline to address, that a victim's right to refuse to be deposed could extend beyond the conclusion of the criminal trial.

10

apply that principle to a parallel civil proceeding in which the subject of the proposed deposition is the criminal offense committed against that victim.

¶12 The Franklins also argue that, because the VBR explicitly authorizes the legislature or the people "to extend any of these rights to juvenile proceedings," but does not contain a similar provision relating to civil proceedings, victim rights are unavailable in civil proceedings. *See* Ariz. Const. art. II, § 2.1(D). The inclusion of juvenile proceedings in the VBR, however, clarifies that victims of offenses perpetrated by minors who are defendants in quasi-criminal, delinquency proceedings may qualify as "victims" for purposes of the VBR. *See* A.R.S. § 8-381 (giving victim's rights when offenses committed by juvenile). In contrast, protecting the right to refuse to be deposed in a parallel civil proceeding merely preserves a right already granted to the victim in a criminal proceeding; it does not expand the class of qualifying victims beyond "person[s] against whom the criminal offense has been committed." *See* Ariz. Const. art. II, § 2.1(C). Therefore, the reference to juvenile proceedings in the VBR does not inform resolution of the question before us.

¶13 Preserving crime victims' right to refuse to be deposed in any venue regarding the offense committed against them is necessary to promote the purpose of the VBR. The purpose underlying a victim's right to refuse a pretrial interview is to protect the victim's privacy and minimize contact with the defendant prior to trial. *State v. Riggs*, 189 Ariz. 327, 330, 942 P.2d 1159, 1162 (1997); *see also Champlin*, 192 Ariz. 371, ¶ 20, 965 P.2d at 767 (purpose of VBR includes healing of ordeals and avoiding retraumatization). Any deposition about the offense would expose victims to the very

11

harm against which the VBR protects. Unlike other positive rights afforded under the VBR that cannot be reduced by actions taken or abstained from in a parallel civil proceeding (e.g., right to be present for, informed of, and heard at particular proceedings, Ariz. Const. art II, § 2.1(A)(2)-(4)), the right to refuse to be deposed is immediately and completely defeated if the defendant can compel a victim to submit to a deposition in a separate proceeding.

¶14        For the foregoing reasons, we conclude the respondent judge erred when he denied the state's request for a protective order. We grant the state's request for special action relief, vacate the respondent's order denying the state's request for a protective order, lift the stay previously ordered by this court, and direct the respondent to enter orders consistent with this decision.

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Presiding Judge


CONCURRING:


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge

H O W A R D, Chief Judge, dissenting.

¶15        I respectfully dissent because the constitutional and legislative contexts do not support an interpretation of the Victims' Bill of Rights (VBR) that extends a victim's right to refuse an interview and deposition to civil proceedings. This court reviews

constitutional issues de novo. *State v. Moody*, 208 Ariz. 424, ¶ 62, 94 P.3d 1119, 1140 (2004).

¶16     In interpreting the constitution, our goal is "to effectuate the intent of those who framed the provision and, in the case of an amendment, the intent of the electorate that adopted it." *Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994). We look first to the plain language of the provision. *Id.* If the language is clear, we look no further, but if the language is ambiguous we look to the intent behind it. *See id.* And, it "'is a cardinal rule of constitutional construction that the interpretation, if possible, shall be such that each provision should harmonize with all the others. Different sections or provisions relating to the same subject must be construed together and read in the light of each other.'" *Samaritan Health Sys. v. Superior Court*, 194 Ariz. 284, ¶ 23, 981 P.2d 584, 590 (App. 1998), *quoting Herndon v. Hammons*, 33 Ariz. 88, 92, 262 P. 620, 621 (1927). Additionally, "'[a]s the clause in the constitution and the act of the legislature relate to the same subject, like statutes in pari materia, they are to be construed together.'" *Roberts v. Spray*, 71 Ariz. 60, 70, 223 P.2d 808, 815 (1950), *quoting Cooper Mfg. Co. v. Ferguson*, 113 U.S. 727, 733 (1885).

¶17     Article II, § 2.1(A)(5) of the Arizona Constitution states that victims have the right "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." It does not directly state whether it applies only in criminal proceedings or also in civil proceedings. Ariz. Const. art. II, § 2.1(A)(5). Additionally, interviews and depositions are provided for in the criminal rules, but only depositions are mentioned in the civil

13

rules. *See* Ariz. R. Crim. P. 15.3(a)(2); Ariz. R. Civ. P. 26(a). Therefore, the constitutional provision is ambiguous with regard to whether it applies in both contexts. Consequently, we must examine the historical context of the provision to determine the electorate's intent. *See Jett*, 180 Ariz. at 119, 882 P.2d at 430. "To determine the intent of the electorate, courts may also look to the publicity pamphlet distributed at the time of the election." *Heath v. Kiger*, 217 Ariz. 492, ¶ 13, 176 P.3d 690, 694 (2008).

¶18 Arizona voters adopted article II, § 2.1 of the Arizona Constitution through a 1990 initiative measure on the ballot. *See* Ariz. Const. art. II, § 2.1; *see also Arizona Publicity Pamphlet: Propositions to be submitted to the qualified electors of the State of Arizona* 33-36 (1990). The legislative council submitted arguments favoring and opposing the proposition for voter consideration in the publicity pamphlet distributed at the time of the election. *Arizona Publicity Pamphlet* at 34-36. Neither the arguments for nor the arguments against the proposition directly state whether the right to refuse an interview and deposition would apply in criminal and civil proceedings. *Arizona Publicity Pamphlet* at 34-36. However, none of the arguments advanced by the legislative council refer to civil matters in any way but rather refer only to the criminal setting. *Arizona Publicity Pamphlet* at 34-36. The rest of the arguments in the pamphlet, submitted by citizens, also refer solely to criminal proceedings. *Arizona Publicity Pamphlet* at 36-43. All evidence of voter intent points to victims' rights being intended to apply in criminal proceedings, and no evidence points to any voter intent to apply the rights in civil proceedings.

14

¶19 We further look to the surrounding constitutional provisions to harmonize subsection 5 within that context. *See Samaritan Health Sys.*, 194 Ariz. 284, ¶ 23, 981 P.2d at 590. The first subsection in the VBR states that a victim has the right "[t]o be treated with fairness, respect, and dignity, and to be free from intimidation, harassment, or abuse, throughout the criminal justice process." Ariz. Const. art. II, § 2.1(A)(1). Of the twelve subsections enumerating victims' rights, ten explicitly refer to aspects of the criminal justice system and one gives victims the right to be informed of their other constitutional rights. *See* Ariz. Const. art. II, § 2.1(A)(1)-(12). And one of these subsections requires victims' rights be protected under all rules concerning criminal procedure or admissibility of evidence in criminal proceedings. *See* Ariz. Const. art. II, § 2.1(A)(11). Because subsections surrounding subsection 5 overwhelmingly refer to criminal proceedings and because none refers to civil proceedings, construing this provision to include civil proceedings would not harmonize the sections. *See Samaritan Health Sys.*, 194 Ariz. 284, ¶ 23, 981 P.2d at 590.

¶20 Additionally, we look to the legislature's understanding of subsection 5 of the VBR for additional aid in interpreting the provision. *See Jett*, 180 Ariz. at 119, 882 P.2d at 430. The VBR gives the legislature "the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights" in the provision. Ariz. Const. art. II § 2.1(D). And "define" means "[t]o set forth the meaning of (a word or phrase)." *Black's Law Dictionary* 455 (9th ed. 2009). This mandate gives the legislature the authority to set forth the meaning of the constitutional provisions. Furthermore, courts have found the legislature's interpretation of constitutional

15

provisions to be persuasive authority. *See Apache County v. Sw. Lumber Mills, Inc.*, 92 Ariz. 323, 326, 376 P.2d 854, 855-56 (1962) ("nearly contemporaneous legislative act interpreting a new constitutional provision will, after acquiescence in this interpretation by the interested parties for a period of years, be highly persuasive as the correct interpretation"); *Fairfield v. Foster*, 25 Ariz. 146, 151, 214 P. 319, 321 (1923) (when language ambiguous courts may consider "meaning previously given it by co-ordinate branches of the government"); *cf. Bolin v. Superior Court*, 85 Ariz. 131, 136, 333 P.2d 295, 299 (1958) ("We realize that the construction placed upon the Constitution by administrative officers of the state is not binding, but certainly such construction should be considered in the interpretation of the Constitution by this court.").

¶21     Section 13-4433, A.R.S., is a part of the Victims' Rights Implementation Act. 1991 Ariz. Sess. Laws, ch. 229, §§ 1, 7. That section provides that "[u]nless the victim consents, the victim shall not be compelled to submit to an interview on any matter . . . that is conducted by the defendant, the defendant's attorney or an agent of the defendant." A.R.S. § 13-4433(A). The Implementation Act does not mention depositions other than to state that they are not included in the definition of "[c]riminal proceeding." A.R.S. § 13-4401; *see also* 1991 Ariz. Sess. Laws, ch. 229, § 7. Interviews are provided for in the criminal context, Ariz. R. Crim. P. 15.3(a)(2), but not in the civil context, *see* Ariz. R. Civ. P. 26(a).

¶22     In its statement of intent in enacting the Victims' Rights Implementation Act, the legislature set forth that it intended to apportion fairly the duties established in article II, § 2.1 of the Arizona Constitution at all stages of the criminal justice process.

1991 Ariz. Sess. Laws, ch. 229, § 2(3). The fact sheet for House Bill 2412 enacting the VBR into law states that "the constitutional amendment g[ave] the Legislature the authority to amend or repeal all rules governing criminal procedure and the admissibility of evidence in all criminal proceedings." House Fact Sheet, H.B. 2412, 40th Leg., 1st Reg. Sess. (Ariz. 1991). This is evidence the legislature believed the VBR granted it authority only over criminal procedure and the admissibility of evidence in criminal proceedings, not over matters of civil procedure. And the legislature does not mention civil proceedings in either the statement of intent or in the fact sheet. 1991 Ariz. Sess. Laws, ch. 229, § 2; House Fact Sheet, H.B. 2412, 40th Leg., 1st Reg. Sess. (Ariz. 1991). Had the legislature thought or intended that this one provision granting the right to refuse an interview would apply in the civil context, it would have said so. Thus, the contemporaneous legislative history indicates the legislature defined the VBR as applying to criminal proceedings.

¶23        Furthermore, "we construe statutory provisions in a manner consistent with related provisions." *Home Builders Ass'n of Cent. Ariz. v. City of Mesa*, 594 Ariz. Adv. Rep. 22, ¶ 7 (Ct. App. Nov. 4, 2010). Section 13-4402(A), A.R.S., states that the victim's rights arise on arrest or formal charging of the defendant and continue until final disposition of the charges, i.e., during the criminal process. The statute does not mention any civil proceedings. § 13-4402. Section 13-4405, A.R.S., defines the notice to which a victim is entitled, including notice of the right "to be treated with fairness, respect and dignity and to be free of intimidation, harassment or abuse throughout the criminal or juvenile justice process." § 13-4405(A)(3)(a). The legislature also defines

17

the terms relevant to crime victims' rights in A.R.S. § 13-4401. It includes definitions for appellate proceeding, criminal proceeding, and post-conviction relief proceeding, but it does not include a definition for civil proceeding. *See* § 13-4401. Most of the remaining statutes regarding crime victims' rights explicitly refer to criminal proceedings. *See* A.R.S. §§ 13-4401 through 13-4440. And only the statute setting forth the conduct for a victim's rights representative for minors or vulnerable adults mentions civil proceedings at all. A.R.S. § 13-4403(D)(2), (E). Construed consistently with related provisions, § 13-4433 refers to a victim's right to decline an interview with the defendant, defense counsel or the defendant's representative in a criminal proceeding.

¶24        The majority relies on A.R.S. § 13-4418, which states that the crime victims' rights chapter should be liberally construed to protect victims' rights. But, "[i]t is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions." *See State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960). And interpreting the statute to include a victim's right to refuse to be deposed or interviewed in a civil proceeding, although only during the pendency of the criminal proceedings, would stretch the statute beyond the intention of the voters and the legislature.[8]

¶25        While extending victims' rights to related civil proceedings may have merit, the people or the legislature should do so. Declining to interpret the VBR as extending to the civil context does not leave victims without protection. The state can

_____

[8]We are not dealing here with a defendant who has initiated a civil action for the purpose of evading the victim's rights.

request a stay of the civil forfeiture proceedings until the criminal proceedings conclude. In light of the constitutional and legislative contexts and histories, I would decline to extend to the civil context a victim's right to refuse an interview with the defense.

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge