258 P.3d 182

Laura WINTERBOTTOM; Chris Winterbottom; Barbara Winterbottom Stapp, Petitioners,

v.

The Honorable Emmet RONAN, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

R. John Lee and Jane Doe Lee, a married couple, Real Parties in Interest.

R. Keith Perkins and S. Kent Phelps, Attorneys for Laura Winterbottom, Chris Winterbottom, and Barbara Winterbottom Stapp, Petitioners,

The Honorable Emmet Ronan, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

R. John Lee and Jane Doe Lee, a married couple, Real Parties in Interest.

Nos. 1 CA–SA 11–0101, 1 CA–SA 11–0105.

Court of Appeals of Arizona, Division 1, Department C.

May 26, 2011.

Never Again Foundation for Legal Services By R. Keith Perkins, Phoenix, Attorneys for Petitioners Winterbottom.

The Law Offices of Riggs Ellsworth & Porter P.L.C. By Matthew L. Riggs, Mesa, Attorneys for Petitioners Perkins/Phelps.

Broening Oberg Woods & Wilson By Donald Wilson, Jr. and Brian W. Purcell, Phoenix, Attorneys for Respondent Lee.

## OPINION

KESSLER, Judge.

¶ 1 Petitioners Laura Winterbottom, Chris Winterbottom, and Barbara Winterbottom Stapp ("Crime Victims") filed a petition for special action in this Court seeking reversal

of a superior court order denying their motion for a protective order to prevent their deposition.[1] We hold the Victims Bill of Rights does not preclude the deposition of the Crime Victims in this case because they will not be deposed by the criminal defendant, the criminal defendant's attorney, or another person acting on behalf of the criminal defendant or in the criminal defendant's interest. Accordingly, we accept jurisdiction of the petition for special action but deny relief from the superior court's denial of a protective order.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 The State charged Jon Winterbottom ("Winterbottom") with attempted molestation of his two step-daughters in 2000. Winterbottom pled guilty. In 2004, the stepdaughters, through their mother, filed suit against Jon for tort damages arising from the molestation. During the tort action, Winterbottom's attorney, John Lee ("Lee"), allegedly failed to respond to discovery requests. He also requested and received leave to withdraw from the representation after Winterbottom's mother informed him that she could no longer afford to continue funding his defense. Winterbottom represented himself *in propria persona* for approximately a year after Lee withdrew, and settled the suit for 2.2 million dollars. As part of the settlement, Winterbottom agreed to pay $111,500 and in exchange, the Crime Victims agreed not to execute on the judgment against the remainder of Winterbottom's assets except for one-third of any money he might receive as a malpractice award against Lee.

¶ 3 Winterbottom filed a legal malpractice complaint against Lee in January 2010, alleging that Lee committed professional negligence by failing to adequately respond to discovery requests and instead moving to withdraw as Winterbottom's defense counsel. Lee's counsel subpoenaed the Crime Victims for deposition. The Crime Victims filed a motion for protective order, arguing that the

deposition violated the Crime Victims' rights established in Article 2, section 2.1 of the Arizona Constitution, and that depositions related to their victimization would be unduly embarrassing pursuant to Arizona Rule of Civil Procedure 26(c). The superior court denied the motion for a protective order barring the depositions, but limited the depositions so Lee's malpractice counsel could not ask the victims about the molestation. The Crime Victims filed a petition for special action. We stayed discovery until we could decide this special action.

## ANALYSIS

¶ 4 We accept jurisdiction of the Crime Victims' petition for special action. The Crime Victims have standing to bring a special action to enforce their rights. Ariz. R.P. Spec. Act. 2(a)(2). Like the denial of a testimonial privilege, denial of the right not to be deposed or interviewed cannot be remedied on appeal, so special action jurisdiction is appropriate. *See Sun Health Corp. v. Myers*, 205 Ariz. 315, 317, ¶ 2, 70 P.3d 444, 446 (App.2003).

¶ 5 We start (and end) our analysis with the language of the constitutional portion of the Victims Bill of Rights and its implementing statutes. Our goal when interpreting a statute or constitutional provision is to fulfill the intent of the authors and voters who approved it. *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003) (quoting *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)); *State v. Lee*, 226 Ariz. 234, 237, ¶ 9, 245 P.3d 919, 922 (App.2011). If the language of those provisions is clear, they are the best indicator of the authors' intent and as a matter of judicial restraint we "must 'apply it without resorting to other methods of statutory interpretation,' unless application of the plain meaning would lead to impossible or absurd results." *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, 303, ¶ 9, 93 P.3d 501, 503 (2004) (citation omitted); *State v. Roscoe*, 185 Ariz. 68, 71, 912 P.2d 1297, 1300 (1996). "It is only

1. The Crime Victims' attorney brought a separate special action to enforce an attorney-client privilege, which we consolidated with this action. For the reasons stated in a separately issued

memorandum decision, we accept jurisdiction and grant relief on that special action. See ARCAP 28(g) (authorizing partial publication of opinions).

where there is no doubt as to the intention of those who frame an amendment or statute that a court may modify, alter, or supply words that will 'obviate any repugnancy to or inconsistenc[y] with such intention,' and by so doing permit 'particular provisions' to be read or construed otherwise than 'according to their literal meaning.' " *Bd. of Supervisors v. Pratt*, 47 Ariz. 536, 542–43, 57 P.2d 1220, 1223 (1936) (quoting *Clark v. Boyce*, 20 Ariz. 544, 185 P. 136 (1919)). This Court's duty is to faithfully apply the constitution and not to add to it, and we therefore decline to stretch the constitution beyond its natural meaning. *See also Jett v. City of Tucson*, 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994) (holding that plain meaning of unambiguous constitutional provision should be followed as written).

¶ 6 The relevant constitutional provision of the Victims Bill of Rights provides that "a victim of crime has a right ... [t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. Art. 2, sec. 2.1(A)(5). The implementing statute similarly provides that "[u]nless the victim consents, the victim shall not be compelled to submit to an interview on any matter ... that is conducted by the defendant, the defendant's attorney or an agent of the defendant." Ariz. Rev.Stat. § 13–4433(A) (2010). "This plain language limits the scope of a victim's right ... by the identity of the person requesting the interview—the defendant or the defendant's representative." *Lee*, 226 Ariz. at 238, ¶ 10, 245 P.3d at 923. Because the deposition in this case was not sought by the criminal defendant, his representative or someone acting on the criminal defendant's behalf, but rather by a person now adverse to the criminal defendant, the constitutional and statutory provisions do not apply by their own terms.[2]

¶ 7 The Crime Victims contend that the Victims Bill of Rights should apply because the party seeking to depose them, Lee, previously represented Winterbottom in the tort action.[3] Neither the text of the Arizona Constitution nor the implementing statutes justifies their position. Nor can we say that the result here leads to an absurd result. The purpose of this provision of the Victims Bill of Rights is to protect the crime victims from having to be deposed or interviewed by the defendant or his representative, thus providing "crime victims with 'basic rights of respect, protection, participation and healing of their ordeals.' " *Champlin v. Sargeant*, 192 Ariz. 371, 375, ¶ 20, 965 P.2d 763, 767 (1998) (quoting 1991 Session Laws ch. 229 § 2), *superseded by statute on other grounds as stated in Lee*, 226 Ariz. at 240 n. 6, 245 P.3d at 923 n. 6. This goal is not *contradicted* by a deposition over one decade later by a party adverse to the criminal defendant's position.

¶ 8 Additionally, the text of the constitution already protects victims from the harm suggested by Petitioners. If a criminal defendant and his or her attorney feign a dispute and collude to obtain an otherwise unauthorized deposition or the person seeking to take the victim's deposition is acting on behalf of the criminal defendant, the plain text of the constitution precludes the deposition. Ariz. Const. Art. II, Sec. 2.1(A)(5). Petitioners have offered no evidence that situation exists in this case, and we decline to expand the Arizona Constitution beyond its plain meaning to protect against speculative dangers unsupported by the evidence of the case. Our holding that the Arizona Constitution does not categorically preclude such discovery does not leave crime victims without protection. In their motion for a protective order in the superior court, the victims *requested relief from the deposition* pursuant to Arizona Rule of Civil Procedure 26(c) on

**2.** Because we deny relief on the ground that the person taking the deposition is not the criminal defendant's attorney or someone representing the criminal defendant's interests, we need not consider whether the provisions of the Victims Bill of Rights protecting crime victims from being interviewed or deposed apply beyond the end of a criminal case. *See Lee*, 226 Ariz. at 238 n. 7, ¶ 11, 245 P.3d at 923 n. 7 (declining to decide same).

**3.** More precisely, the petition for special action represents the relationship between Winterbottom and Lee as an ongoing representation muddied by a financial dispute. Because Lee withdrew from representing Winterbottom with permission from the superior court, we find the Crime Victims' description of the relationship inaccurate.

the ground that it would be unduly embarrassing or oppressive. Lee's counsel responded to that concern by assuring the court that the deposition questions would relate to the basis for their settlement in the civil damages case and not the molestation. The superior court accepted that restriction on the deposition as sufficient to protect the crime victims from undue embarrassment.[4] In this case, we cannot say the superior court abused its discretion in balancing the equities.

## CONCLUSION

¶ 9 For the foregoing reasons we accept jurisdiction of the Crime Victims' petition for special action but deny relief from the superior court's order denying their motion for a protective order to bar the depositions.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICK IRVINE, Judge.

---

4. We note that the Civil Rules provide a remedy if the deposition questioning becomes inappro-priate. Ariz. R. Civ. P. 30(d).