IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2 CA-SA 2002-0067 |
| HON. MONICA STAUFFER, Judge of the | ) | DEPARTMENT B |
| Superior Court of the State of Arizona, in | ) | |
| and for the County of Graham, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMIEL PROTO, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Graham County Cause No. CR 2002-089

RELIEF GRANTED IN PART

Barbara LaWall, Pima County Attorney
  By Elizabeth Hurley                                                                    Tucson
                                                              Attorneys for Petitioner


Dennis McCarthy                                                                        Safford
                                              Attorney for Real Party in Interest

E S P I N O S A, Chief Judge.

¶1        Petitioner the State of Arizona seeks special action relief from the respondent

judge's order in the underlying sexual abuse prosecution granting real party in interest Amiel

Proto's motion to compel interviews of three witnesses the state intends to call at trial. The state contends that these witnesses are victims who have the right to refuse defense interviews under the Victims' Bill of Rights, Ariz. Const. art. II, § 2.1(A)(5), and the equivalent statutory provision, A.R.S. § 13-4433. The issues raised are of first impression, pure questions of law, and have significant statewide ramifications. Moreover, the state does not have an equally plain, speedy, and adequate remedy by way of appeal. *See State ex rel. Romley v. Hutt*, 195 Ariz. 256, 987 P.2d 218 (1999). Because we find that the respondent judge erred by granting the motion to compel as to one of the witnesses, we accept jurisdiction of this special action and grant partial relief. Ariz. R. P. Special Actions 1(a), 3, 17B A.R.S.

¶2 Proto is being prosecuted for allegedly committing sexual abuse against V.M. in the fall of 2001. Rule 404(c), Ariz. R. Evid., 17A A.R.S., permits the admission of "evidence of other crimes, wrongs, or acts . . . if relevant to show that the defendant had a character trait giving rise to aberrant sexual propensity to commit the offense charged." Under that rule, the state plans to call three witnesses, N.T., T.G., and D.M., to testify that Proto committed similar acts of sexual misconduct against them. The incident involving N.T. took place in the spring of 2000 and resulted in Proto's conviction for sexual abuse, the appeal from which is pending in this court. *State v. Proto*, No. 2 CA-CR 2001-0453. The incident involving D.M. allegedly occurred in the summer of 1998. The incident involving T.G. allegedly occurred sometime in 1997. The latter two alleged incidents did not result in arrests or the filing of criminal charges.

¶3 Proto apparently sought pretrial interviews of N.T., T.G., and D.M. Invoking the Victims' Bill of Rights on their behalf, the state informed Proto that all three were victims of criminal offenses committed by him and that they refused to be interviewed by him about those offenses prior to their testimony in the prosecution of Proto's alleged sexual abuse of V.M. Proto

2

moved to compel the interviews, *see* Ariz. R. Crim. P. 15.3, 16A A.R.S.; the state opposed that motion, claiming that the witnesses were victims and were entitled to refuse. The respondent judge summarily granted Proto's motion to compel all three interviews. At the state's request, the court stayed the proceedings pending the result of this special action. The issue we must address is whether victims' rights attach to such Rule 404(c) witnesses in the prosecution of a defendant for an offense against a third person, an issue of first impression in this state.

¶4        "The Victims' Bill of Rights . . . was adopted and its statutory implementation enacted . . . to provide crime victims with 'basic rights of respect, protection, participation and healing of their ordeals.'" *Champlin v. Sargeant*, 192 Ariz. 371, ¶20, 965 P.2d 763, ¶20 (1998), *quoting* the "Victims' Rights Implementation Act,"[1] 1991 Ariz. Sess. Laws, ch. 229, § 2. As amended in 1990, the Arizona constitution provides: "[A] victim of crime has a right . . . [t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1(A)(5). The victims' rights implementation legislation expanded on this concept and sets forth procedures by which this right can be invoked. § 13-4433. "Victim" is defined in both the constitution and the implementation legislation as "a person against whom the criminal offense has been committed." Ariz. Const. art. II, § 2.1(C); A.R.S. § 13-4401(19). "Criminal offense" is defined in § 13-4401(6) as "conduct that gives a peace officer or prosecutor probable cause to believe that a felony or that a [serious] misdemeanor . . . has occurred."

¶5        The respondent judge's order appears to conflict with the statutory and constitutional provisions cited above. By declaring N.T., T.G., and D.M. to be Rule 404(c)

---

[1]This Act added Chapter 40 to the criminal code, "Crime Victims' Rights," A.R.S. §§ 13-4401 to 13-4437. 1991 Ariz. Sess. Laws, ch. 229, § 7.

witnesses and by invoking § 13-4433 on their behalf, the prosecutor essentially avowed that he had probable cause to believe that Proto had committed felonious acts against them, which facially would appear to qualify them as victims under §§ 13-4401(6) and (19). But, A.R.S. § 13-4402(A) provides: "Except as provided in §§ 13-4404[2] and 13-4405,[3] the rights and duties that are established by this chapter arise on the arrest or formal charging of the person or persons who are alleged to be responsible for a criminal offense against a victim." Of the alleged incidents involving the three potential Rule 404(c) witnesses, only the offense against N.T. resulted in an arrest or formal criminal charges.

### Application of § 13-4402(A) to Rule 404(c) Witnesses

¶6 We first address whether § 13-4402(A) applies to N.T. in this prosecution of Proto for an offense against another. N.T. is a victim whose rights have arisen under the statute by virtue of the formal charges filed against Proto that led to his prosecution and conviction for committing an offense against her. Those rights remain in effect while Proto appeals that conviction. § 13-4402(A). Whether N.T.'s rights extend to the instant, unrelated prosecution is a question for which there is no direct answer in the Victims' Bill of Rights or in Chapter 40, Title 13, although our supreme court addressed a similar issue in *Champlin*. The defendant in that case had been charged with offenses arising out of four criminal acts committed against three victims on three separate occasions. Some victims allegedly had witnessed some of the crimes committed against other victims. The trial court denied the defendant's motion to depose all three of these individuals, finding they were victims and could, therefore, decline to be interviewed under

[2]Section 13-4404 addresses the limited victims' rights of legal entities such as corporations.

[3]Section 13-4405 sets forth the duties of a law enforcement agency, upon detection of a criminal offense, in informing victims of their rights to available services and information.

4

§ 13-4433(A). The defendant sought special action review in Division One of this court, which declined jurisdiction. The defendant then petitioned the supreme court, which granted review "in order to provide guidance under article 2, section 2.1 of the Constitution and to apply section 13-4433(A) to the facts of [that] case." 192 Ariz. at 372, 965 P.2d at 764. The court rejected the state's contention that the three victims could refuse to be interviewed entirely and held that the victims were required to submit to interviews about incidents they might have witnessed on other occasions, even if committed by the same defendant. The court concluded, however, that each victim could refuse to be interviewed about offenses committed against that victim or offenses against others that that victim had witnessed on the same occasion as the offenses committed against that victim. *Champlin*.

¶7        Although not directly on point, *Champlin* stands for the principle that a victim's right to refuse to be interviewed about the offense committed against that victim is inviolate, even as to other offenses allegedly committed on the same occasion by the defendant.[4] We see no reason not to extend that principle to a separate prosecution involving another charge against the same defendant when that prosecution will require the victim of an unrelated offense by the defendant to recount the particulars of that offense. Thus, the respondent judge erred in ordering that N.T. be interviewed about her prospective testimony, pursuant to Rule 404(c), which by its nature will be limited to Proto's offense committed against her.

---

[4]Proto relies entirely on *Champlin*, arguing that because N.T., T.G., and D.M. "are merely witnesses to separate, unrelated [to the offense against V.M.] criminal behavior," they cannot be considered victims in the instant case. But Proto misreads *Champlin*, which held that victims may be interviewed regarding charges in the indictment to which they were eyewitnesses so long as they were not also victims on that same occasion. Nothing before us suggests N.T., T.G., or D.M. witnessed Proto's alleged offense against V.M.

¶8 We next address whether § 13-4402(A) applies to T.G. and D.M. The state, noting that the statute specifies that the triggering event is "the arrest or formal charging of the person or persons who are alleged to be responsible for *a* criminal offense against *a* victim" (emphasis added), maintains that the arrest or formal charging upon which a victim's rights arise under § 13-4402(A) is not "victim-specific." The state thus argues that Proto's arrest and prosecution in the instant case for the offense against V.M. activated victims' rights for "all persons whom he has victimized," specifically including T.G. and D.M. Although this is a tenable interpretation of § 13-4402(A), an equally tenable interpretation is that "a criminal offense against a victim" refers to the offense against the victim whose rights are in question. Under this latter interpretation, although T.G. and D.M. might be "victims" in the abstract, their rights to refuse a defense interview would not yet have arisen because Proto has been neither arrested nor subjected to criminal charges for the acts the state claims he committed against them. We review statutory construction and interpretation issues *de novo*. *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 20 P.3d 1158 (App. 2001).

¶9 If, as here, the language of the statute is not clear, we look to other indicia of legislative intent, "including 'the statute's context, subject matter, historical background, effects, consequences, spirit and purpose.'" *Norgard v. State ex rel. Berning*, 201 Ariz. 228, ¶7, 33 P.3d 1166, ¶7 (App. 2001), *quoting Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶8, 19 P.3d 1241, ¶8 (App. 2001). The provision at issue must be considered in the context of the entire legislative scheme of which it is a part. *Hobson*. Upon reviewing the entirety of the statutory provisions for "Crime Victims' Rights," A.R.S. §§ 13-4401 to 13-4439, and after considering the consequences of the interpretation urged by the state here, we conclude that a crime victim's rights

6

are specific to a crime committed upon that victim and arise only upon an arrest for or formal charging of that crime.

¶10        Although the state intends to call N.T., T.G., and D.M. pursuant to Rule 404(c), which limits their testimony to acts showing sexual propensity, the state's reasoning would also bestow victim status and rights upon many witnesses called pursuant to Rule 404(b) to testify about "other crimes, wrongs, or acts" the accused has allegedly committed against them. Moreover, whether the prosecutor actually intends to call such persons at trial would be irrelevant to their status as victims, which would exist, under the state's logic, any time the prosecutor had probable cause to believe that a defendant had committed a criminal offense against such a person in an unrelated incident. Such a broad application of victims' rights is hardly apparent from the text of the constitutional or statutory victims' rights provisions. Indeed, over a decade has passed since the Arizona Constitution was amended to include the Victims' Bill of Rights, and this is the first time the state has urged such a novel interpretation of it and the enabling legislation, at least in published case law. Had the electorate and the legislature intended for victims' rights to apply to this class of witnesses testifying pursuant to Rules 404(b) and (c), that intention could easily have been made clear.

¶11        In addition, the broad interpretation urged by the state, if logically extended, could result in burdensome consequences for law enforcement agencies, courts, probation departments, and prosecutors. Here the state seeks only to invoke N.T.'s, T.G.'s, and D.M.'s rights to refuse defense interviews, but if the three witnesses are victims whose rights have arisen by reason of Proto's arrest and prosecution in the instant case, it follows that they would also have other statutory rights accorded to victims in this case. The law enforcement agency or prosecutor would have been required to inform them of the date of Proto's initial appearance. § 13-4406. The

7

prosecutor would have been obligated to give them notice of the charge against Proto, their rights as victims, and the procedures they should follow to invoke their right to confer with the prosecutor. § 13-4410. Although not involved in the offense, they could demand to confer with the prosecutor about the state's direction and disposition of the prosecution. § 13-4419. If Proto is convicted of the crime against V.M., they would be able to view his presentence report, submit victim's impact statements, and present evidence and voice their opinions at Proto's sentencing proceeding, despite their lack of any direct involvement in the case. §§ 13-4425, 13-4424, 13-4426. And, if they felt that they had been denied these or any other victims' rights to which they were entitled, they would have standing to bring a special action or, under some circumstances, an action for damages against the governmental entity allegedly responsible for violating their rights. § 13-4437.

¶12 We decline to read into Chapter 40 or the Victims' Bill of Rights a legislative or electoral intent to turn any given criminal prosecution into a forum in which all persons who might have been victimized by the defendant in the past can assert victim status and exercise the full panoply of victims' rights. Such a result would not only drain the resources of the criminal justice system, it could also potentially jeopardize the rights of the actual victim of the criminal offense for which the defendant is prosecuted, including the victim's right "to justice and due process," Ariz. Const. art. II, § 2.1(A), and to "a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. II, § 2.1(A)(10).

¶13 We note that the state's reasoning would not necessarily extend all the statutory provisions to N.T., T.G., and D.M.; some of them are expressly limited to proceedings or events precipitated by a "criminal offense against the victim." See, e.g., §§ 13-4415 to 13-4416; §§ 13-4421 to 13-4423. Others, such as the provisions discussed above addressing notice to the

8

victim and the victim's rights at sentencing, as well as § 13-4433, which addresses a victim's right to refuse a defense interview, simply discuss the rights of a "victim" in general without linking the term to a specific criminal offense. *See*, *e.g.*, §§ 13-4406 to 13-4411. But we are unable to discern from this distinction a legislative intent to have some rights apply only to immediate victims of the charged crime while other rights, such as the right to refuse a defense interview, encompass victims of collateral, uncharged acts by the defendant as well. Indeed, some of the restrictive and non-restrictive statutes clearly apply to the same "victim." *Compare* § 13-4419(A) (stating that prosecutor "shall confer with the victim about the disposition of a criminal offense, including the victim's views about . . . plea . . . negotiations"), *with* § 13-4423(A) (stating that "victim has the right to be present and be heard at any proceeding in which a negotiated plea for the person accused of committing the criminal offense against the victim will be presented to the court"). It appears the legislature avoided redundancy by sometimes merely using the term "victim" in Chapter 40, Title 13, but it universally used that term to mean the victim of the criminal offense at issue.

¶14        We also note practical reasons for having a victim's right to refuse a defense interview be triggered by an arrest or formal charging. These events result in the availability of a police report or grand jury or preliminary hearing transcript, which gives some independent, verifiable assurance of probable cause that a criminal offense has been committed. Moreover, such documents can also benefit both the prosecution and defense, because they will record and preserve the facts underlying the alleged victim's prospective testimony.

¶15        Based on these considerations, we conclude that § 13-4402(A) does not apply to T.G. and D.M. because their rights to refuse to be interviewed simply have not yet arisen. The state has not arrested or charged Proto for any criminal acts he might have committed against those

9

two prospective witnesses. Accordingly, the respondent judge properly ordered T.G. and D.M. to submit to defense interviews.

## Constitutionality of § 13-4402(A)

¶16 Anticipating this result, the state alternatively argues that § 13-4402(A) cannot supersede the victims' rights enumerated in the Arizona Constitution, and, to the extent it does, the statute is unconstitutional. We review the constitutionality of a statute *de novo* and presume it is constitutional. *City of Tucson v. Rineer*, 193 Ariz. 160, 971 P.2d 207 (App. 1998). "'The party challenging the validity of a statute has the burden of overcoming that strong presumption.'" *Id*. at ¶12, *quoting State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988).

¶17 The Victims' Bill of Rights itself contains no implementation provision, but it does provide that "[t]he legislature, or the people by initiative or referendum, have the authority to enact substantive and procedural laws to define, implement, preserve and protect the rights guaranteed to victims by this section." Ariz. Const. art. II, § 2.1(D). The legislature did just that in enacting § 13-4402(A), thereby implementing a victim's rights upon the arrest or formal charging of the accused. Section 13-4402(A) thus complements and completes the victims' rights provisions in the state constitution; it does not conflict with the definition of "victim" in Ariz. Const. art. II, § 2.1(C) or any other provision. We therefore see no constitutional problem in conditioning the implementation of victims' rights to the occurrence of verifiable, documented events such as an arrest or formal charging. The state has failed to rebut the presumption that § 13-4402(A) is constitutional.

## Conclusion

¶18 We grant the state partial relief and vacate that portion of the respondent judge's order granting Proto's motion to compel a witness interview of N.T. We emphasize that N.T.'s

10

right to refuse such an interview is merely a continuation of her rights that were implemented pursuant to her status as a victim in her own case, not from Proto's arrest or prosecution in the instant proceeding. But she is not a victim of the alleged offense against V.M. and is not entitled, therefore, to notice of or a right to participate in the various proceedings in that prosecution. N.T.'s right to refuse a defense interview in Proto's previous prosecution for the crime against N.T. extends into this proceeding to the extent her testimony is limited to Proto's victimization of her. Such an extension is consistent with one of the purposes of the Victims' Bill of Rights, which is to prevent or minimize the "retraumatization" of a victim who is obligated to recount and relive the crime that was committed against him or her.[5] *Champlin*, 192 Ariz. 371, ¶20, 965 P.2d 763, ¶20.

¶19     Special action jurisdiction granted; relief granted in part.

_____
PHILIP G. ESPINOSA, Chief Judge

CONCURRING:


_____
WILLIAM E. DRUKE, Presiding Judge


_____
M. JAN FLÓREZ, Judge

---

[5]In its arguments the state repeatedly asserts that the victims should not be "retraumatized" through defense interviews. The state's assumption of the role of champion for these victims, while appropriate and understandable, is also somewhat ironic in light of the fact that it is the state bringing them into this prosecution; as a result, they will be examined and cross-examined in detail about their past victimization in open court at a public trial, regardless of victim status. *See State ex rel. Romley v. Superior Court*, 172 Ariz. 232, 836 P.2d 445 (App. 1992) (at trial, victim's rights must yield to defendant's right to due process and effective cross-examination of witnesses).