306 P.3d 85

**STATE of Arizona, Appellee,**

v.

**Justin Scott KENDRICK, Appellant.**

**Nos. 1 CA–CR 11–0849, 1 CA–CR 11–0850.**

Court of Appeals of Arizona, Division 1, Department B.

July 16, 2013.

---

Thomas C. Horne, Arizona Attorney General By Joseph T. Maziarz, Chief Counsel Criminal Appeals and Liza–Jane Capatos, Assistant Attorney General, Phoenix, for Appellee.

James J. Haas, Maricopa County Public Defender By Charles R. Krull, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

NORRIS, Judge.

¶ 1 The issue in this appeal is whether a probationer's unauthorized removal of an electronic monitoring device, required as a condition of probation, constitutes escape in violation of Arizona Revised Statute ("A.R.S.") section 13–2503(A)(2) (Supp.2012).[1] We hold it does not. Accordingly, we reverse Justin Scott Kendrick's conviction for

1. Although the Arizona Legislature amended certain statutes cited in this opinion after the date of Kendrick's offense, the revisions are immaterial. Thus, we cite to the current version of these statutes unless otherwise noted.

escape, vacate the superior court's finding that he violated his probation, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In 2008, Kendrick pled guilty in Maricopa County Superior Court Cause No. CR2007–006213–001 to attempted molestation of a child and sexual abuse, both class three felonies and dangerous crimes against children ("2007 case"). Pursuant to his plea agreement, the superior court suspended imposition of sentence on each count and placed Kendrick on lifetime probation. As a condition of probation and as required by A.R.S. § 13–902(G) (Supp.2012), the superior court subjected Kendrick to global positioning system ("GPS") monitoring for the term of his probation ("monitoring order").[2]

¶ 3 In July 2010, a probation officer petitioned to revoke Kendrick's probation, alleging he had violated his probation by, *inter alia*, interfering with the electronic monitoring device in violation of A.R.S. § 13–3725 (2010), absconding, and failing to comply with GPS monitoring as required by A.R.S. § 13–902(G). Subsequently, and as relevant here, in Maricopa County Superior Court Cause No. CR2010–145260–001, a grand jury indicted Kendrick for escape in the second degree, a class five felony ("2010 case"). A.R.S. § 13–2503(A)(2), (B). The petition to revoke Kendrick's probation and escape charge arose out of his failure to wear a GPS monitoring device ("GPS unit") on his ankle pursuant to the court's monitoring order.

¶ 4 A jury found Kendrick guilty of escape. The superior court sentenced Kendrick to a prison term for escape, and found he had violated his probation in the 2007 case based on his conviction in the 2010 case. The court reinstated Kendrick on lifetime probation to begin after his release from prison.

2. Section 13–902(G) mandates GPS or electronic monitoring of registered sex offenders placed on probation for certain dangerous crimes against children.

## DISCUSSION

¶ 5 On appeal, Kendrick argues the superior court should have granted his motion for judgment of acquittal on the escape charge because the State failed to prove he had committed a "departure from custody ... with knowledge that such departure [was] unpermitted" in violation of A.R.S. § 13–2501(4) (Supp.2012). Although Kendrick acknowledges he was required to wear the GPS unit as a condition of probation, he argues that requirement did not "constitute the constructive restraint sufficient to satisfy the definition of custody" in A.R.S. § 13–2501(3), the statute that defines "custody" for purposes of escape. Reviewing these arguments de novo, we agree. *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011) (appellate court reviews ruling on motion for judgment of acquittal de novo); *State v. Stauffer*, 203 Ariz. 551, 554, ¶ 8, 58 P.3d 33, 36 (App.2002) (appellate court reviews issues of statutory construction and interpretation de novo).

¶ 6 As charged in this case, a person commits escape in the second degree by knowingly "[e]scaping or attempting to escape from custody imposed as a result of having been arrested for, charged with or found guilty of a felony." A.R.S. § 13–2503(A)(2). Under A.R.S. § 13–2501(4), and as relevant here, " '[e]scape' means departure from custody ... with knowledge that such departure is unpermitted." In turn, " '[c]ustody' means the imposition of actual or constructive restraint pursuant to an on-site arrest or court order ..." A.R.S. § 13–2501(3).

¶ 7 We have addressed the meaning of "custody" in two cases where, as here, the defendant removed an electronic monitoring device. But in each case, in addition to removing the device, the defendant also violated a court order that subjected the defendant to home detention. Thus, in *State v. Williams*, 186 Ariz. 622, 925 P.2d 1073 (App. 1996), we held the defendant had violated A.R.S. § 13–2503(A)(2) by removing an electronic monitoring device and departing from home detention without authorization. There, we explained: "Defendant's removal of the electronic monitoring device and unauthorized departure from his home and Arizona constitute[d] an act of departing from court-ordered custody." *Id.* at 623, 925 P.2d at 1074. Similarly, in *In re Brittany Y.*, 214 Ariz. 31, 32, ¶ 9, 147 P.3d 1047, 1048 (App. 2006), we held a juvenile had violated A.R.S. § 13–2502(A) (2001)[3] by removing an electronic ankle monitor and leaving home after the juvenile court had imposed electronic monitoring and home detention as a condition of the juvenile's release pending probation violation proceedings.

¶ 8 Here, unlike *Williams* and *Brittany Y.*, in the 2007 case, the superior court did not order home detention, or confine Kendrick to any particular place, or require him to be at any place at a particular time. Although the terms of his probation prohibited him from going to certain places (for example, traveling outside Maricopa County or going to places primarily used by children, without permission from the probation department),[4] Kendrick, who was living at a homeless shelter when arrested, could otherwise come and go as he pleased and live where he wished.

¶ 9 The State argues, however, that the superior court's monitoring order by itself constituted a court-ordered "constructive restraint" under A.R.S. § 13–2501(3). Noting the Legislature did not define "restraint," the State relies on dictionary definitions and argues "restraint" should be construed broadly to include a range of meanings, from "[l]oss or curtailment of freedom" to "[a]n inhibiting influence." Thus, the State argues the superior court's order requiring Kendrick to wear the GPS unit as a condition of probation constituted a court-ordered "restraint" because it "inhibit[ed] him from violating the rules imposed as part of his probation and, at the same time, ... curtail[ed] his freedom to move about without constant monitoring by the State."

3. Under this statute, a person commits escape in the third degree by knowingly escaping or attempting to escape from custody after being arrested for, charged with or found guilty of a misdemeanor or petty offense.

4. The State has not argued that these probation terms subjected Kendrick to "custody" within the meaning of the escape statute.

¶ 10 We reject the State's argument that court-ordered electronic monitoring *by itself* constitutes restraint and thus, "custody" under A.R.S. § 13–2501(3). In construing a statute, our task is to "fulfill the intent of the legislature that wrote it." *State v. Williams,* 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) (citations omitted). In our view, the State's definition of restraint goes beyond what the Legislature contemplated in enacting the escape statutes. A defendant placed on probation is subject to a host of restrictions and limitations on his or her freedom, all of which inhibit, and should inhibit, a probationer's conduct. Prohibitions on alcohol consumption, drug testing requirements, and travel restrictions, to name a few, come to mind. Under the State's expansive definition of restraint—which could include any probationary term curtailing freedom or inhibiting conduct—a probationer who violated these or other similar probation terms could be charged with escape.

¶ 11 Although we may consider dictionary definitions in construing words in a statute in the absence of a specific statutory definition, we must consider their common meaning and ordinary usage in the context of the statutory scheme, and we are not obligated to apply all possible definitions. A.R.S. § 1–213 (2002) (directing that words in statutes "be construed according to the common and approved use of the language"); *State v. Wise,* 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) ("words and phrases in statutes shall be given their ordinary meaning unless it appears from context or otherwise that a different meaning is intended"); *State v. Gray,* 227 Ariz. 424, 427, ¶ 9, 258 P.3d 242, 245 (App.2011) ("We recognize that a dictionary definition may not be conclusive and, because 'context gives meaning,' statutory terms should not be considered in isolation.") (citation omitted).

¶ 12 Further, we are not writing on a clean slate when it comes to the meaning of "restraint." Our supreme court addressed the meaning of the term in the context of custody for resisting arrest and escape, and stated "the common understanding of the word connotes controlling, limiting, or restricting the movement of another." *State v. Stroud,* 209 Ariz. 410, 412, ¶ 9, 103 P.3d 912, 914 (2005). And, in *Brittany Y.,* we relied on *Stroud*'s definition of restraint in concluding the juvenile there was "under restraint and in custody ... because the juvenile court had restricted her movement by ordering home detention and electronic monitoring." 214 Ariz. at 32, ¶ 9, 147 P.3d at 1048.[5]

¶ 13 Here, the court-ordered GPS monitoring allowed the probation department to track Kendrick's movements, but this monitoring did not confine or restrain his movements. As his probation officer testified at trial: "That is the intention of the GPS device, [it] is for monitoring the person's whereabouts at given locations and exact times." The GPS monitoring did not constitute "actual or constructive restraint" for purposes of "custody" under A.R.S. § 13–2501(3), and accordingly, Kendrick's failure to wear the GPS unit did not constitute a "departure from custody"—an essential element of escape—in violation of A.R.S. § 13–2503(A)(2). Therefore, we vacate the judgment of guilt entered against Kendrick on the escape charge. Because the superior court found Kendrick had violated his probation based on the escape conviction, we also vacate the court's finding that Kendrick had violated his probation in the 2007 case, and remand that matter for further proceedings consistent with this opinion.

## CONCLUSION

¶ 14 For the foregoing reasons, we vacate Kendrick's conviction and sentence for es-

---

**5.** Some states have defined escape to require a form of detention or confinement, while other states have adopted a more expansive definition of escape that would include removal of an electronic monitoring device by itself. *Compare Commonwealth v. Wegley,* 574 Pa. 190, 829 A.2d 1148, 1152 (2003) (home detention and removal of electronic monitoring device constitutes escape), *with* Alaska Stat. § 11.56.310(a)(3) (West 2013) (escape includes removing, tampering with, or disabling electronic monitoring equipment), Ind.Code § 35–44.1–3–4(b) (West 2013) (escape includes violating home detention order or removing electronic monitoring device), *and* Minn.Stat. § 609.485 Subd. 2(7) (West 2013) (escape includes absconding from electronic monitoring or removing electronic monitoring device).

cape in the second degree in the 2010 case and the superior court's finding he violated his probation in the 2007 case. On remand, the superior court shall enter a judgment of acquittal in the 2010 case, and in the 2007 case conduct further proceedings consistent with this opinion.

CONCURRING: ANDREW W. GOULD and RANDALL M. HOWE, Judges.