IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RICHARD THOMAS HAMILTON, *Appellant.*

No. 1 CA-CR 18-0593
FILED 6-25-2020

Appeal from the Superior Court in Maricopa County
No.  CR 2016-158498-001
The Honorable Warren J. Granville, Judge (Retired)
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michelle L. Hogan
*Counsel for Appellee*

DM Cantor, Phoenix
By Christine Whalin
*Counsel for Appellant*

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Lawrence F. Winthrop joined.

**B R O W N**, Judge:

**¶1**          Hamilton appeals from his convictions and sentences for various sexual-conduct offenses.  He argues the trial court erred when it ruled that three witnesses who gave other-acts evidence were considered victims under Arizona law and therefore entitled to (1) refuse pretrial interviews and (2) remain in the courtroom during trial even though Hamilton had invoked the rule of exclusion of witnesses.  He also challenges other rulings, which we separately address in a memorandum decision.  We hold that the court properly declined to allow pretrial interviews of the three witnesses but erred in allowing them to hear other witnesses testify at trial.  The error, however, did not cause prejudice.

## DISCUSSION

**¶2**          Hamilton was indicted on two counts of sexual conduct with a minor and six counts of molestation of a child, committed against victims M.C. and A.C.  The trial court later granted the State's motion to dismiss two of the molestation counts.  At the conclusion of an 11-day trial, the jury found Hamilton guilty on the remaining counts and the court sentenced him to two life terms in prison, one for each count of sexual conduct with a minor, and 28 years on each count of child molestation.  This timely appeal followed.

### A.      Witnesses' Right to Refuse Pretrial Interviews

**¶3**          When a defendant is charged with a sexual offense, Arizona Rule of Evidence ("Rule") 404(c) allows a court to admit evidence that the defendant committed other crimes or acts if such evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." *See State v. Yonkman*, 233 Ariz. 369, 373, ¶ 11 (App. 2013).  Here, the State noticed its intent to call three women, H.H., R.H., and R.P. ("the 404(c) witnesses"), to testify at trial pursuant to Rule 404(c).  Their anticipated testimony stemmed from an

earlier prosecution against Hamilton ("the 2000 case").[1] Hamilton asked the trial court to allow him to interview the 404(c) witnesses before trial, but the State objected, arguing the 404(c) witnesses were victims under Arizona law who had the right to refuse the interviews.

¶4 The trial court denied Hamilton's request to order the interviews, concluding the 404(c) witnesses were entitled to decline to be interviewed because they were victims in the 2000 case. The court explained that although Hamilton was no longer on probation from the 2000 case, that case had not reached final disposition because he was still required to register as a sex offender as a result of those convictions. Hamilton argues the court abused its discretion in denying his interview request.

¶5 The Victim's Bill of Rights ("VBR"), Ariz. Const. art. II, § 2.1(12)(C), along with its statutory implementation act, A.R.S. §§ 13-4401 to -4443, were enacted "to provide crime victims with 'basic rights of respect, protection, participation and healing of their ordeals.'" *Champlin v. Sargeant*, 192 Ariz. 371, 375, ¶ 20 (1998) (citation omitted). We construe the victims' rights statutes liberally "to preserve and protect the rights to which victims are entitled." A.R.S. § 13-4418. "[W]e review questions of statutory interpretation and constitutional law de novo." *State v. Ramsey*, 211 Ariz. 529, 532, ¶ 5 (App. 2005). "We are required to follow and apply the plain language of the Victims' Bill of Rights in interpreting its scope." *State ex rel. Romley v. Super. Ct. In & For Cty. of Maricopa*, 184 Ariz. 409, 411 (App. 1995). "When interpreting the scope and meaning of a constitutional provision, we are guided by fundamental principles of constitutional construction. Our primary purpose is to effectuate the intent of those who framed the provision and, in the case of an amendment, the intent of the electorate that adopted it." *Jett v. City of Tucson*, 180 Ariz. 115, 119 (1994).

---

[1] In 1998, Hamilton was found guilty of one count of sexual abuse and six counts of sexual conduct with a minor in Maricopa County Superior Court No. CR1997-007744. R.P. was the victim. After this court reversed the convictions, H.H. and R.H. came forward with allegations against Hamilton. He pled guilty to three counts of attempted sexual conduct with a minor, committed against R.P. in Maricopa County Superior Court No. CR2000-003435-A. The charges involving H.H. and R.H. were dismissed as part of the plea agreement. Hamilton was released from prison in 2003 and was discharged from lifetime probation in 2009 due to a change in the law but continued to have a lifetime obligation to register as a sex offender.

¶6          Victims' rights commence upon the defendant's arrest or formal charging and are enforceable "until the *final disposition of the charges*, including acquittal or dismissal of the charges, all post-conviction release and relief proceedings and the discharge of all criminal proceedings relating to restitution."  A.R.S. § 13-4402(A) (emphasis added); *see State v. Leonardo, ex rel. Cty. of Pima*, 226 Ariz. 593, 594, ¶ 5 (App. 2011) (recognizing that victims' rights continue to be enforceable until restitution is paid and probation is completed).  "Final disposition" means "the ultimate termination of the criminal prosecution of a defendant by a trial court, including dismissal, acquittal or imposition of a sentence."  A.R.S. § 13-4401(10).

¶7          Hamilton contends the trial court should not have allowed the 404(c) witnesses to refuse to be interviewed because their rights as victims terminated upon the final disposition of his previous charges.  He argues that (1) R.P.'s rights as a victim terminated when Hamilton was discharged from probation in 2009, and (2) H.H. and R.H. could no longer assert victims' rights after the charges involving them were dismissed as part of the plea agreement in the 2000 case.

¶8          "[V]ictims have a constitutional right to decline interviews." *State v. Roscoe*, 185 Ariz. 68, 73–74 (1996) ("[T]he victim's right to decline an interview has been considered absolute.").  A victim's right to refuse to be interviewed extends to a separate prosecution involving another charge against the same defendant when that interview will require the victim to recount the particulars of the offense the defendant committed against the victim.  *State v. Stauffer*, 203 Ariz. 551, 553–54, ¶ 7 (App. 2002).

¶9          In *Leonardo*, we held the victim retains the right to decline to be interviewed for as long as the defendant continues on probation.  226 Ariz. at 596, ¶ 11.  The defendant in that case was on probation from a prior case and the time for commencing a post-conviction relief proceeding had passed.  *Id.* at 594–95, ¶ 6.  The victim in the prior case was to testify in the current case but objected to sitting for a pretrial interview with defense counsel.  We held the victim could refuse the interview because "final disposition" of the charges could not occur as long as probation continued. *Id.* at 596, ¶ 11.  We reasoned that if a victim's rights were no longer enforceable while a defendant remained on probation, the victim would be unable to exercise other statutory rights, including the right to be present at any probation revocation or modification proceeding, or the right to request notice of changes to the defendant's terms of probation or probationary status.  *Id.* at 595–96, ¶¶ 10–11.  Therefore, because the legislature granted statutory rights to victims throughout a defendant's term of probation, it

could not have intended that an order placing the defendant on probation would constitute the "final disposition" of the charges against the defendant. *Id.*

¶10     We hold that, like a continuing term of probation, a continuing obligation to register as a sex offender extends the date of final disposition of a defendant's charges for purposes of victim's rights. As relevant here, a defendant convicted of sexual conduct with a minor is required to register. A.R.S. § 13-3821(A)(4). After successfully completing probation, if other conditions are met, the defendant may petition to terminate that requirement. A.R.S. § 13-3826(A). Before ruling on that petition, the superior court must provide enough notice for the State to notify the victim, and the victim must be given the opportunity to be heard. A.R.S. § 13-3826(B).

¶11     Although Hamilton's probation had ended, the charges against him had not reached final disposition because he had an ongoing duty to register as a sex offender. In *Leonardo*, we explained that the legislature could not have intended a defendant's placement on probation to constitute the "final disposition" of his charges because it had afforded victims ongoing rights throughout the defendant's probationary term. 226 Ariz. at 595–96, ¶¶ 8–11. That reasoning applies with equal force to a defendant's duty to register as a sex offender. As with probation revocation proceedings, the legislature has provided victims the right to notice and an opportunity to be heard at any proceeding to terminate a defendant's obligation to register as a sex offender. Accordingly, the legislature could not have intended that charges against a defendant reach their final disposition so long as the defendant is still subject to the registration requirement.[2]

¶12     Hamilton cites *State v. Noble* as support for the proposition that his charges reached their final disposition despite his ongoing duty to register as a sex offender because the requirement to register is regulatory rather than punitive, and thus not part of the "criminal justice process" through which a victim's rights continue. 171 Ariz. 171, 178 (1992) (disapproved on other grounds by *State v. Trujillo*, No. CR-18-0531-PR, 2020 WL 2107912, at *7, ¶ 38 (Ariz. May 4, 2020)). While it is true that sex

---

[2]     Hamilton has not cited, nor has our research revealed, any authority controverting the trial court's conclusion that because he was required to register as a sex offender, he has the continuing right to seek post-conviction relief, which means there has been no final disposition of his 2000 case.

offender registration is not punitive, neither is a defendant's obligation to pay restitution to the victim. *Trujillo*, at *5, ¶ 27 (agreeing with "*Noble*'s conclusion that the structure of the [sex offender] registration scheme is regulatory, not punitive"); *State v. Fancher*, 169 Ariz. 266, 268 (App. 1991) ("The purpose of restitution is not to punish, but to make the victim whole."). And yet a victim who has suffered economic loss in a particular case has the statutory right to recover restitution until it is paid. *Noble* does not alter our analysis.

¶13        Finally, Hamilton argues we should treat H.H. and R.H. differently than R.P. because the charges involving H.H. and R.H. were dismissed pursuant to the plea agreement in which he pled guilty to charges committed against R.P. But that argument conflicts with the statutory language protecting H.H.'s and R.H.'s ability to exercise certain victims' rights as though the charges had not been dismissed. *See* A.R.S. § 13-4402.01(A) (stating that if an offense against a victim has been charged but the offense is dismissed by a plea agreement in which the defendant pled to other charges, the victim of the dismissed charge "may exercise all the applicable rights of a crime victim throughout the criminal justice process as though the count or counts involving the person had not been dismissed"). The trial court did not abuse its discretion when it determined the 404(c) witnesses were entitled to refuse pretrial interviews with defense counsel.[3]

### B.        Defendant's Right to Exclude Witnesses From Trial

¶14        Following the State's opening statement, defense counsel invoked the rule of witness exclusion under Rule 615 and argued the 404(c) witnesses' rights as victims to refuse pretrial interviews did not entitle them to be present in the courtroom while other witnesses testified. *See* Ariz. R. Evid. 615(e) ("At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony.").[4] The trial judge denied the request, explaining he felt "obliged to follow" the previous judge's ruling addressing Hamilton's request to interview the 404(c)

---

[3]        After the ruling addressing pretrial interviews, a different judge presided over the remainder of the proceedings in the case.

[4]        Arizona Rule of Criminal Procedure 9.3(a) states, in relevant part, that "[t]he court may, and at the request of either party must, exclude prospective witnesses from the courtroom during opening statements and other witnesses' testimony." For purposes of this case, the differences between Rule 9.3(a) and Rule 615 are not material.

witnesses. Thus, the trial judge reasoned that if the 404(c) witnesses are victims for Rule 15, they are victims for Rule 615." Each of the three witnesses heard testimony from other witnesses at various times during the trial. Hamilton argues the court reversibly erred by allowing them to remain in the courtroom.

¶15 "The purpose of Rule 615 is to prevent witnesses from tailoring their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid." *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 14 (2017) (citations omitted). "Sequestering witnesses is 'one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice.'" *Id.* (quoting 6 John H. Wigmore, *Wigmore on Evidence § 1838*, at 463 (James H. Chadbourn ed., 1976)). It "discourages and exposes 'fabrication, inaccuracy, and collusion.'" *Id.* (quoting Fed. R. Evid. 615 advisory committee's note to 1972 proposed rules); *see also State v. Sowards*, 99 Ariz. 22, 26 (1965) ("The purpose of excluding witnesses from the trial is to encourage the discovery of truth, and detection and exposure of falsehood.").

¶16 By its terms, however, Rule 615 does not authorize a court to exclude "a victim of crime, as defined by applicable law, who wishes to be present during proceedings against the defendant." And the VBR gives a victim the "right to be present throughout all criminal proceedings in which the defendant has the right to be present." A.R.S. § 13-4420.

¶17 We are not persuaded by the State's suggestion that § 13-4420 "could be construed" as giving any Rule 404(c) witnesses who were victims in a previous proceeding the right to hear the testimony of other witnesses at trial in a subsequent case. As we explained in *Stauffer*, though victims of a prior offense may assert their right to decline a pretrial interview in a prosecution of the same defendant for a later crime against a third person, they cannot exercise every right available to victims under the VBR. 203 Ariz. at 555, ¶ 12. We reasoned that a victim's right to refuse a pretrial interview in a subsequent prosecution "is merely a continuation of her rights that were implemented pursuant to her status as a victim in her own case," not from the defendant's arrest or prosecution in the subsequent proceeding, and is limited to the defendant's victimization of that victim. *Id.* at 556, ¶ 18. That extension was consistent with the purpose of the VBR, "which is to prevent or minimize the 'retraumatization' of a victim who is obligated to recount and relive the crime that was committed against [them]." *Id.* (quoting *Champlin*, 192 Ariz. at 375, ¶ 20).

¶18     We also noted in *Stauffer* that an overbroad interpretation of the VBR could lead to victims in previous cases invoking other statutory rights, such as demanding to confer with the prosecutor about the direction and disposition of the later case, submitting victim impact statements, presenting evidence at sentencing proceedings, or even bringing a special action or action for damages against the State if they felt their rights were being violated. *Id.* at 554–55, ¶ 11.  We therefore declined to read into the VBR an intent to "turn any given criminal prosecution into a forum in which all persons who might have been victimized by the defendant in the past can assert victim status and exercise the full panoply of victims' rights."  *Id.* at 555, ¶ 12.  We explained that "such a result would not only drain the resources of the criminal justice system, it could also potentially jeopardize the rights of the actual victim of the criminal offense for which the defendant is prosecuted."  *Id.*

¶19     Applying those principles here, although the 404(c) witnesses had the right under the VBR to refuse pretrial interviews in the current case, they did not have the right to remain in the courtroom when other witnesses were testifying after the invocation of Rule 615.  Unlike victims M.C. and A.C., who are the subject of the charges in the present case and had the right to be present throughout the trial proceedings, *see* A.R.S. § 13-4420, the 404(c) witnesses' right to be present at trial extended only to when they were testifying.  Preserving a victim's right to refuse a pretrial interview in a subsequent case is consistent with the VBR's purpose to protect victims from re-traumatization. *Stauffer*, 203 Ariz. at 556, ¶ 18.  But granting victims from prior cases an exception from Rule 615 at the trial proceedings in a subsequent case does not similarly advance that purpose, and it fails to adequately preserve a defendant's right to invoke Rule 615 when facing the unrelated charges against him.

¶20     Thus, the trial court erred when it permitted the 404(c) witnesses to remain in the courtroom after defense counsel invoked Rule 615.  Normally in this circumstance, we would require the State to prove beyond a reasonable doubt that the error did not contribute to the verdict. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005).  In this unique situation, however, we hold the State to an arguably more stringent standard: when a trial judge does not honor a request to exclude witnesses, such failure "is presumed prejudicial unless the absence of prejudice is clearly manifest from the record."  *State v. Roberts*, 126 Ariz. 92, 94 (1980); *see Spring*, 243 Ariz. at 171, ¶ 19 ("Although *Roberts* spoke in broad terms, we have no reason here to revisit its holding because we find that case materially distinguishable.").

8

**¶21** In *Roberts*, defense counsel "moved to invoke the rule on exclusion of witnesses" during cross-examination of a key fact witness. 126 Ariz. at 94. The trial court denied the motion, explaining in part that the rule was discretionary and the motion was untimely. *Id.* On appeal, our supreme court departed from earlier precedent that suggested reversal based on a failure to honor a request to exclude "must result in prejudice to the defendant." *Id.* The court explained, however, that "a rule requiring an actual showing of prejudice works an injustice" and the "better approach" is applying a presumption that a conviction must be reversed "unless scrutiny of the record reveals that the court's denial of [a defendant's] motion to exclude . . . did not prejudice him in any way." *Id.* Reversing the conviction, the court concluded it was possible that discrepancies between testimony offered by a witness and his prior statements to police "came about as a result of his hearing the testimony" of the only two witnesses who witnessed the alleged criminal conduct. *Id.* at 95.

**¶22** After carefully reviewing this record, we conclude Hamilton was not prejudiced in any way by the trial court's error. As noted, the overall purpose of Rule 615 is to prevent a witness from being influenced to change his or her testimony based upon the testimony of another witness. We do not believe that purpose was violated here, because unlike in *Roberts*, nothing in the record indicates the 404(c) witnesses were influenced to alter their stories about Hamilton's other acts by listening to the testimony of any other witness. Further, the record on appeal includes the detailed statements the 404(c) witnesses made in police interviews relating to the other acts committed by Hamilton and the trial court's detailed findings in its Rule 404(c) ruling. At trial, the 404(c) witnesses testified consistent with their prior statements and the court's ruling. *Cf. Spring*, 243 Ariz. at 172, ¶¶ 21–22 (finding no indication that "expert witnesses materially altered their opinions based on their review of the other experts' prior testimony, or that their trial testimony varied from their prior reports or deposition.").

**¶23** Hamilton argues he was prejudiced by the superior court's error because a juror asked the following question during the testimony of the second 404(c) witness: "How does the inclusion of witnesses work? Yesterday, for example, a couple witnesses were present while they were not testifying. I understand the exclusion of witnesses to say that no witness will be present except when they are testifying." Hamilton renewed his objection to allowing the 404(c) witnesses to remain in the courtroom and requested a mistrial, which the court denied. Nothing in the record indicates the juror's question was shared with the other jurors. On appeal, Hamilton contends the question demonstrates prejudice because it shows the jury took into consideration the presence of the 404(c)

witnesses in the courtroom, placing his case "in the subset of cases noted in *Roberts* where there is a fair chance that prejudice may be presumed." He argues the presumption is even stronger here because the 404(c) witnesses were "fact witnesses." *See Spring*, 243 Ariz. at 172, ¶ 21 ("[V]iolations involving fact witnesses are more likely to be prejudicial than violations involving expert witnesses.").

¶24 Hamilton's assessment of the implication of the juror's question is purely speculative. A more reasonable explanation is that the question signaled that the juror was more inclined to discredit the testimony of the 404(c) witnesses because, unlike the other witnesses, they had not been subjected to the rule of exclusion. At worst, the question reveals that when determining what weight to assign to the testimony, the juror considered the fact that the 404(c) witnesses were present to hear other witnesses testify.

¶25 Nor are we persuaded by Hamilton's assertion that because the 404(c) witnesses testified as fact witnesses, we must presume prejudicial error. The three witnesses were not typical fact witnesses; they were not testifying about facts that gave rise to the current charges against Hamilton. Hamilton does not argue the 404(c) witnesses learned anything at trial, including from hearing other witnesses testify, that affected their testimony—each of them testified consistent with what they had previously reported to police more than two decades earlier. In that sense, their testimony is much more akin to the expert witness testimony in *Spring* than the fact witness testimony at issue in *Roberts*. *See id.* at 172, ¶ 22 (distinguishing *Roberts*, which "involved a material fact witness changing his story after hearing the trial testimony of two other witnesses" from the circumstances in *Spring*, where nothing in the record revealed that neither defense expert materially altered their opinions based on their review of the testimony of plaintiffs' experts, or that the defense experts' testimony varied from their own reports or depositions).

¶26 We conclude that although the superior court should have excluded the 404(c) witnesses from the trial pursuant to Rule 615, the error did not prejudice Hamilton.

**CONCLUSION**

¶27       We affirm Hamilton's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA